Gary PEYTON and Joseph
Peyton, Movants,

v.

Mark YOUNG, Administrator of the
Estate of Phyllis Hill, et al.,
Respondents.

Supreme Court of Kentucky.

Nov. 2, 1983.

Bruce K. Davis, Director, Michael M. Hooper, Asst. Director, Kentucky Bar Ass'n, Frankfort, for complainant.

Joe B. Campbell, Bowling Green, for respondent.

William R. Whitledge, Madisonville, for movants.

Ronald K. Bruce, Madisonville, for respondent, Mark Young.

Richard A. Dennis, Asst. U.S. Atty., Louisville, for respondent, I.R.S.

Joe A. Evans, III, Madisonville, for respondent, Madisonville Bldg. & Loan.

James C. Brantley, Dawson Springs, for respondent, estate of William Hill.

LEIBSON, Justice.

The Estate of Phyllis Hill appealed from a judgment directing distribution of certain funds derived from the sale of a residence owned by Phyllis Hill at the time of her death. The Court of Appeals affirmed in part and reversed in part.

On January 30, 1975, William and Phyllis Hill purchased a residence by deed vesting title in them jointly with the right of survivorship. At the time of purchase they executed a first mortgage to Madisonville Building & Loan Association. At a later date, December 23, 1977, William Hill mortgaged the same property to Gary and Joseph Peyton. The Peytons concede that Phyllis Hill did not join in this mortgage.

Subsequently William and Phyllis Hill were divorced and William conveyed his interest in the property to Phyllis. The deed specified that Phyllis was to assume the indebtedness owed to Madisonville Building & Loan Assn., but made no mention of the mortgage to the Peytons. Shortly after this conveyance, William Hill murdered Phyllis and killed himself.

In a foreclosure action, the property was sold by the Master Commissioner. After payment of the costs and the first mortgage to Madisonville Building & Loan Assn., the sum of $28,616.80 remained in the hands of the Master Commissioner for distribution. This amount was claimed both by the Estate of Phyllis Hill and the Peytons. There is also a claim by the United States Internal Revenue Service against these proceeds, but the IRS claim is not involved in the issues before this Court.

Phyllis Hill's estate maintains that she owned the property at her death, had not signed the second mortgage, and is entitled to the proceeds. The Peytons claim an interest under the note and mortgage executed by William Hill. The trial court concluded that the mortgage William Hill had executed to the Peytons embraced the entire property and therefore the Peytons were entitled to the entire proceeds. On appeal the Court of Appeals held that William Hill "could encumber no more than he held, a one-half interest," and reversed the trial court to the extent of one-half of the proceeds.

We granted discretionary review to consider the nature of the various property interests that have been asserted and how they are affected by the strange series of events that have taken place: (1) a second mortgage by only one spouse of his interest in a tenancy by the entirety, (2) followed by an attempt to convey his interest by deed to his spouse, (3) followed by the tragic killing of both his spouse and himself.

◼ There is certain language in the Court of Appeals' opinion which can be interpreted as treating the property interest of the husband and wife as a tenancy in common, which it was not, rather than as a tenancy by the entirety, which it was. Nevertheless, the final result reached by the Court of Appeals is correct and we affirm. William Hill held an undivided in-

terest in the whole of the property subject to the right of survivorship. He encumbered this interest to the Peytons. His subsequent conveyance to his ex-wife did not defeat the Peyton's mortgage against his interest, nor did it enlarge the extent of the interest that was encumbered by the Peyton's mortgage. But did William Hill's murder of his wife enlarge the Peyton's interest?

We consider that our decision in *Cowan v. Pleasant,* Ky., 263 S.W.2d 494 (1953) is dispositive of the issue in this case. In *Cowan,* husband and wife held property under a tenancy by the entirety. The husband murdered his wife and then himself. The issue was whether the heirs of the wife or the heirs of the husband were entitled to the property. The court took an equitable approach, adopting language from *Barnett v. Couey,* 224 Mo.App. 913, 27 S.W.2d 757, in a similar case, as follows:

> "Under the peculiar circumstances here present, neither divestiture of interest nor survivorship exists in contemplation of law as to either. The fund should go just as provided where there is a common calamity and both tenants die simultaneously." 263 S.W.2d at 496.

The essence of the *Cowan* holding is that the husband's heirs who were innocent of wrongdoing should not be deprived of a right to his interests because of his wrongful act; that the case should be treated as if husband and wife both died at the same time in "a common calamity." There is no reason to treat the Peytons, who are creditors innocent of any wrongdoing, any different than we treated innocent heirs in *Cowan.*

On the other hand, we do not consider that William Hill's conveyance to his wife at the time of the divorce should affect the result. This conveyance was subject to the Peyton's mortgage interest which could not be defeated by his effort to convey title. There is no reason, legal or equitable, to consider that the conveyance from William Hill to Phyllis Hill which was subject to the mortgage served either to enlarge or defeat that mortgage.

For the reasons stated herein, the decision of the Court of Appeals is affirmed.

AKER, LEIBSON, STEPHENSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents by a separate opinion.

STEPHENS, C.J., joins in this dissent.

GANT, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that portion of the majority opinion which would permit a recovery of only one-half of the undistributed proceeds by the heirs of the wife Phyllis Hill. I believe the heirs are entitled to a full recovery.

The majority decision casts a long shadow upon the concept of joint tenancy by the entirety with the right of survivorship in Kentucky.

In 1975, William and Phyllis Hill received a deed vesting title in them jointly with the right of survivorship. This created what is known in the law as a tenancy by the entirety with the right of survivorship. As a general rule, an estate by the entirety can be conveyed or encumbered only by a joint instrument or with the consent of both tenants. Neither party can, without the approval of the other, encumber or in any way impair the estate of the property with respect to the other.

At the time the Hills purchased the property they executed a first mortgage to the Madisonville Building and Loan Association. Later, William Hill, the husband, became indebted to Gary and Joseph Peyton and executed and delivered what was purported to be a second mortgage signed by himself and his wife in the amount of $30,718.66. Such a second mortgage required the consent of the first mortgagee which was not sought. When William Hill did not complete payment on the second mortgage, the Peytons filed a foreclosure suit. During those legal proceedings it was discovered that Phyllis Hill's name had been forged on the mortgage and she had stricken through

her signature, specifically refusing to ratify the second mortgage. She testified by deposition that her husband delivered the note to the Peytons with the space for her signature blank. She also stated that she did not sign her name to the mortgage and did not authorize any other person to sign her name and that the mortgage was never certified by a Notary Public in her presence.

Two weeks prior to the filing of the foreclosure action, the Hills filed a divorce action. Approximately 45 days thereafter, William Hill conveyed to Phyllis Hill all his interest in the property and recited in the deed of conveyance the existence of a first mortgage to the Madisonville Building and Loan. The deed is totally silent as to any second mortgage to the Peytons. This conveyance extinguished the tenancy by the entireties and title to the real estate merged in the wife subject to any valid mortgages.

It is my opinion that the second mortgage to the Peytons was not valid because the husband alone could not encumber any more than his contingent interest or the expectancy of survivorship. Here Phyllis and William Hill received the real estate as joint tenants by the entirety with the right of survivorship. In *Hoffmann v. Newell,* Ky., 60 S.W.2d 607 (1932), we held that a conveyance to a husband and wife as tenants by the entirety creates one indivisible estate in them both and in the survivor, which neither can destroy by separate act. In *Barton v. Hudson,* Ky.App., 560 S.W.2d 20 (1977), the court cited *Hoffmann, supra,* and held that during the joint lives of husband and wife, neither may encumber any part of the joint interest in real estate when they are tenants by the entirety. I believe the principal thrust of both *Hoffmann* and *Barton, supra,* is to protect the concept of tenancy by the entirety from unilateral encumbrance by one of the parties.

This specific problem appears to be a matter of first impression. It is true that pursuant to *Hoffmann,* Kentucky does allow a creditor of a tenant by the entirety to sell that interest pursuant to statute. It is also true that a number of jurisdictions that follow such a rule permit a spouse to create a valid mortgage on his or her contingent expectancy interest of survivorship in such property. *See* 75 A.L.R.2d § 1197 §§ 11(b), *Interest Held Mortgagable.* On the other hand a number of other jurisdictions do not permit a creditor to reach the interest of an estate by the entirety. It has been held that a creditor of an individual spouse cannot reach the spouse's interest in an entirety estate during the joint lives of the spouses. Id. §§ 11(a).

At common law, the interest of a husband in property held by the entireties was subject to the satisfaction of his individual debts subject to the contingency that if his wife survived him, she would be entitled to the whole estate.

This matter is further complicated by the fact that the husband killed the wife and then committed suicide. KRS 381.280 is a legislative attempt to deprive a convicted murderer of the right to succeed to the property of the victim.

I cannot agree with the majority that the case of *Cowans, supra,* is dispositive of this matter. That case did not involve a merger of title as a result of a conveyance such as we have in this matter. In *Cowans,* the court determined that it was not the intention of KRS 381.280 to work a hardship upon a child whose parent had committed murder. The court also stated that a wrongdoer should not be permitted to profit from his wrongful act. Actually the majority in this case has extended to creditors the protection afforded to a child whose parent has committed a wrongful act. The fact that William Hill committed suicide prevents the invocation of KRS 381.280. It should be understood that in this case, the most innocent party of all, the wife and her heirs, actually suffered. The Peytons took a mortgage which the husband could not make and with the notice that the wife had specifically rejected signing the mortgage. Certainly they should have been on their guard as to the legal and economic validity of such an instrument. If we are balancing the equities, then I would balance them in favor of the heirs of the wife who are the

least culpable of all. The language of tenancies by the entirety with the right of survivorship must mean something, and this Court should sustain the protection previously afforded to people who take title to property under such terms.

The creditors gambled on the survivorship expectancy of the husband. The husband forfeited this right to survivorship by his own wrongful act. Moreover, he conveyed his interest, including the survivorship interest, to the wife. The mortgage was to encumber a contingent interest that was terminated. Certainly the giving of a mortgage under these circumstances could not create rights where none would have existed except for the wrongful acts of the husband/mortgagor. Clearly the wrongdoer would benefit inasmuch as his estate would be relieved of the responsibility of paying a debt which he attempted to establish by mortgaging his survivorship interest.

STEPHENS, C.J., joins in this dissent.