570 A.2d 409

PATRICIA C. FREDA, PLAINTIFF–RESPONDENT, v. COMMERCIAL TRUST COMPANY OF NEW JERSEY, A BANKING INSTITUTION OF THE STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

Argued October 11, 1989—Decided February 21, 1990.

*Steven Wise* argued the cause for appellant (*Kaplowitz and Wise*, attorneys).

*Jill L. McNish* argued the cause for respondent (*Gelman & McNish*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

In this case, the husband mortgaged his interest in real property owned by him and his wife as tenants by the entirety. Thereafter, the husband and wife were divorced, and the equitable distribution plan in their divorce decree required him to convey his interest in the property to her. The essential issue is whether the order for distribution extinguished the mortgage lien on the husband's interest after the conveyance to the wife.

In its judgment, the Chancery Division ruled that the equitable distribution did not extinguish the mortgage. The Appellate Division reversed. We hold that after equitable distribution to the non-debtor spouse of the debtor-spouse's interest in property held in a tenancy by the entirety, the mortgage continues as a lien on that interest, subject to the non-debtor spouse's right of survivorship.

–I–

This matter involves a dispute between two innocent parties, each victimized by Victor Freda, the former husband of plaintiff, Patricia Freda. The parties have stipulated to the basic facts. On December 11, 1969, during the course of their marriage, Patricia and Victor acquired their home in Westfield as tenants by the entirety. In 1978, Victor obtained a loan of $81,556.44 from Community State Bank and Trust Company, the predecessor of defendant, Commercial Trust Company of New Jersey (Commercial Trust). The loan, which Victor apparently obtained to provide funds for his failing restaurant, was evidenced by a note and secured by personal guarantees and

the subject mortgage, all of which he and Patricia ostensibly signed. At that time, however, Patricia and Victor were separated. Unbeknown to the bank or to Patricia, her signature on the note and mortgage had been forged. The bank promptly recorded the mortgage in the office of the Union County Register.

On December 16, 1980, the date of Patricia's divorce from Victor, she was still unaware of the mortgage. No one on her behalf had searched the records in the Register's Office before she agreed to the distribution of the marital assets. The judgment of divorce ordered Victor to convey his interest in the marital premises to her, and required him to "hold plaintiff harmless on any and all liens existing at the time of the conveyance by reason of [his] business ventures." Victor, however, never signed the deed.

Victor defaulted on the Commercial Trust loan, and on May 4, 1981, he filed a petition in bankruptcy. On June 14, 1983, Commercial Trust sued Patricia on her personal guarantee for the balance due of $41,751.04. During the litigation, Patricia established that her signature had been forged, whereupon Commercial Trust voluntarily dismissed the action with prejudice.

Because Victor had never conveyed his interest in the marital home to Patricia, the trustee insisted that she pay $2,500 for a deed of Victor's interest. Before conveying the property to her, the trustee sent a notice in February 1983 "to all creditors and interested parties of Victor J. Freda," advising that the property "is encumbered by mortgages held by City Federal Trust Company * * *." Although the notice did not mention the Commercial Trust mortgage, it advised of the trustee's intent to convey Victor's interest in the property to Patricia "for the sum of $2,500.00 subject to all of the foregoing mortgages but free and clear of any and all judicial liens." Commercial Trust received a copy of the notice, but did not

object to the conveyance. Patricia then paid the requisite $2,500 to the trustee and received a deed from the trustee.

In 1987, when she applied for a second mortgage loan, Patricia discovered that the Commercial Trust mortgage was of record. She requested Commercial Trust to discharge the mortgage, but it refused without payment of the balance due, $49,683.72. The bank concedes the mortgage does not affect Patricia's interest in the property, but contends that it remains as a valid lien on Victor's interest in her hands.

Patricia further asserts that the equitable distribution of assets pursuant to the divorce decree extinguished Commercial Trust's interest in the property. While the present appeal was pending, Patricia filed an order discharging the Commercial Trust mortgage and borrowed funds from a second mortgagee, The Money Store, which is not a party to these proceedings. She seeks an order discharging the mortgage of record. She also asserts that Commercial Trust is barred by principles of equitable estoppel, waiver, and laches from continuing its mortgage on her property.

–II–

Before analyzing the rights of the parties at common law, we consider *N.J.S.A.* 46:3–17.4, which was approved on January 5, 1988, with the express proviso that it "shall take effect on the 90th day after enactment and shall be applicable to all tenancies by entireties which are created on or after the effective date of this act." *L.* 1987, *c.* 357, § 10. *N.J.S.A.* 46:3–17.4 provides that "[n]either spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses." After oral argument, Patricia's counsel directed our attention to the statute, which played no part in the decisions of the lower courts. In a supplemental letter brief, she argues that the statute prevented Victor from mortgaging his interest in the property. We need not determine the cor-

rectness of that argument because we find that the statute does not apply to the property, which Victor and Patricia have held as tenants by the entirety since 1969. The statute took effect nineteen years after the conveyance creating the tenancy and ten years after the execution and recording of the Commercial Trust mortgage. As section 10 indicates, the act applies prospectively to tenancies by the entirety created after its effective date. Consequently, we consider the present matter under common-law principles without reference to *N.J.S.A.* 46:3–17.4.

We have not previously considered the effect of the equitable distribution of assets in a divorce decree on a mortgage given by one spouse on his interest in the property. The issue has divided the lower courts in this matter, separate parts of the Appellate Division, and courts across the country.

Two reported opinions of the Appellate Division delineate the conflict. In *Interchange State Bank v. Riegel,* 190 *N.J.Super.* 139, 462 *A.*2d 198 (1983), a judgment creditor had levied on the husband's interest in the marital home before he and his wife were divorced. The distribution of assets in the divorce decree, however, required the husband to convey to his wife his interest in the home.

According to the court, the husband's interest after the divorce was a "determinable, undivided half interest subject to partition or execution sale to satisfy the lien of the creditor's judgment." *Id.* at 144, 462 *A.*2d 198. Although the divorce converted the tenancy by the entirety to a tenancy in common, it could not extinguish the lien of the non-party creditor. Thus, the equitable distribution of the home was subject to the pre-existing lien.

In *Daeschler v. Daeschler,* 214 *N.J.Super.* 545, 520 *A.*2d 777 (1986), another Appellate Division panel declined to follow *Interchange State Bank.* Underlying the *Daeschler* decision was the court's belief that the Legislature, when it enacted the equitable distribution law, *N.J.S.A.* 2A:34–23 and –24, had in-

tended that the distribution plan could extinguish a lien on property held in a tenancy by the entirety. 214 *N.J.Super.* at 554, 520 *A.*2d 777. The *Daeschler* court reasoned that "the creditor's post-divorce rights are defined and limited by the equitable distribution scheme incorporated into the judgment of divorce." *Id.* at 548, 520 *A.*2d 777. Thus, the automatic conversion of a tenancy by the entirety into a tenancy in common did not survive the enactment of the equitable distribution law. *Interchange State Bank* and *Daeschler* involved judgment liens, and the present case involves a mortgage. In the present context, however, we perceive no basis for distinguishing between a lien arising under a mortgage and one arising under a perfected judgment.

Judicial decisions from other states reflect the difference between the *Interchange State Bank* and *Daeschler* opinions. In a recently decided case, the Oregon Court of Appeals reached the same result as that in *Interchange State Bank.* *Sanderson v. Heffington,* 92 *Or.App.* 145, 757 *P.*2d 866 (1988). In *Sanderson,* the husband forged his wife's signature on a mortgage, the husband and wife were subsequently divorced, and the judgment of divorce awarded the wife the real property "subject to any outstanding indebtedness." 92 *Or.App.* at 147, 757 *P.*2d at 867. After the divorce, the husband defaulted on the loan. The mortgagee was allowed to foreclose on the husband's undivided one-half interest. Reasoning that the divorce destroyed the tenancy by the entirety, but not the mortgage, the court held that the wife took the property subject to the foreclosure judgment. *Id.* at 148, 757 *P.*2d at 867.

The North Carolina Court of Appeals has likewise ruled that a "deed of trust" given by a husband during coverture survived the distribution of the property to the wife in a divorce decree. *Branch Banking and Trust Co. v. Wright,* 74 *N.C.App.* 550, 328 *S.E.*2d 840 (1985). Under North Carolina law, one spouse cannot encumber another spouse's interest during coverture. The court held, however, that after the divorce, the lien of the deed of trust attached to the husband's undivided one-half

interest in the hands of the wife. *Id.* at 553, 328 *S.E.*2d at 842. The divorce converted the tenancy by the entirety to a tenancy in common, subjecting one-half of the property "to the claims of the creditors of either spouse individually." *Ibid.*

The Kentucky Supreme Court reached a similar result in a case in which a husband had signed a second mortgage on property held by him and his wife as tenants by the entirety. *Peyton v. Young,* 659 *S.W.*2d 205 (1983). In a subsequent divorce proceeding, the husband conveyed his interest to his wife. Thereafter, he murdered her and then killed himself. The court held that the mortgage on the husband's interest survived the conveyance to the wife, entitling the mortgagee to one-half of the proceeds from the foreclosure sale of the property. *Id.* at 206–07. Thus, Oregon, North Carolina, and Kentucky have permitted a mortgage executed by one spouse to survive the equitable distribution of the affected property. All three states have allowed the lien to attach to an undivided one-half interest in the property.

The courts of Florida, Georgia, and Pennsylvania, however, have reached a conflicting conclusion. Those courts have ruled that a mortgage given by one spouse will not survive the distribution through a divorce decree of the affected real estate to the other spouse. In *Sharp v. Hamilton,* 520 *So.*2d 9 (Fla.1988), the husband, during the marriage, granted a mortgage on real estate he owned with his wife as tenants by the entirety. Their subsequent divorce decree ordered him to convey his interest to his wife. Under Florida law, real property held as tenants by the entirety is not subject to a lien against only one tenant. *Id.* at 10. According to the court, the decree caused a defeasance of the husband's interest, just as if he had died during the marriage. *Ibid.* Because Florida does not permit one tenant by the entirety to mortgage his or her interest, the case is of limited use in New Jersey, where the interest of one tenant by the entirety is subject to liens on that tenant's interest.

A Pennsylvania case is likewise distinguishable because in that state "[a] husband and wife do not own separate interests in entireties property which can be reached by their individual creditors." *Stop 35, Inc. v. Haines*, 374 *Pa.Super.* 604, 607, 543 *A.*2d 1133, 1135 (1988). Even less relevant is *Richardson v. Park Avenue Bank*, 173 *Ga.App.* 43, 325 *S.E.*2d 455 (1984). In *Richardson,* property formerly held in the husband's name alone was distributed in a divorce decree to the wife alone. After the date of the divorce,, a creditor obtained a judgment against the husband. The court held that the judgment could not reach the property once it was in the hands of the wife. *Id.* at 43–44, 325 *S.E.*2d at 457. In the present case, however, Commercial Trust relies on a mortgage that was recorded before the date of the Fredas' divorce. Because of their factual or legal differences, we distinguish the Florida, Georgia, and Pennsylvania cases from the case before us.

Pursuant to *Interchange State Bank,* the Chancery Division in its judgment declared that the mortgage was "a valid and subsisting lien against the right, title and interest of Victor Freda that was conveyed to the plaintiff; provided, however, that such interest shall expire and be of no force or effect in the event that Victor Freda predeceases Patricia Freda."

The Appellate Division, however, followed *Daeschler* and reversed the Chancery Division. It concluded that Victor's interest as a tenant by the entirety was subject to defeasance by the equitable distribution of the property, and that "Commercial Trust's interest could rise no higher than the defeasible interest of the debtor husband." The court continued that the provision in the Chancery Division's judgment that Commercial Trust's lien would expire if Patricia predeceased Victor

is conceptually unsound: since the tenancy by the entirety is terminated, survivorship is no longer germane either to the debtor spouse or his creditor. If *Interchange State Bank* were applied here, the Commercial Trust mortgage would be a lien against one-half of the property now owned solely by plaintiff. Commercial Trust had been granted a much more limited interest in the property. It cannot fairly claim that the divorce judgment, which extinguished the husband's interest, should have the effect of enhancing its own interest in

the property well beyond what it previously enjoyed and what its debtor ever had.

The differences in the lower court opinions require that we revisit the estate known as tenancy by the entirety, an estate that has been variously described as "incomprehensible," *King v. Greene*, 30 *N.J.* 395, 413, 153 *A.*2d 49 (1959) (Weintraub, C.J., dissenting); a "remnant of other times," *ibid.;* and "the most intimate union of ownership known to the law," H.W. Challis, *Real Property* 282 (1887). Thirty years ago, this Court defined the estate so that a husband and wife

hold as tenants in common for their joint lives; that survivorship exists as at common law and is indestructible by unilateral action; and that the rights of each spouse in the estate are alienable, voluntarily or involuntarily, the purchaser becoming a tenant in common with the remaining spouse for the joint lives of the husband and wife.

[*King, supra,* 30 *N.J.* at 412, 153 *A.*2d 49.]

Neither spouse may partition a tenancy by the entirety during coverture. *Newman v. Chase,* 70 *N.J.* 254, 260–61, 359 *A.*2d 474 (1976); *Dvorken v. Barrett,* 100 *N.J.Super.* 306, 308–09, 241 *A.*2d 841 (App.Div.), *aff'd,* 53 *N.J.* 20, 247 *A.*2d 674 (1968). Divorce, however, terminates a tenancy by the entirety and converts it to a tenancy in common, which is subject to partition. *Newman, supra,* 70 *N.J.* at 262, 359 *A.*2d 474.

During coverture, a judgment creditor of a debtor-spouse may levy on and sell that spouse's right of survivorship as well as his or her undivided one-half interest in the life estate for the joint lives of the tenants. *King, supra,* 30 *N.J.* at 412–13, 153 *A.*2d 49. The sale, however, remains subject to the survivorship interest of the non-debtor spouse. *Dvorken, supra,* 100 *N.J.Super.* at 309, 241 *A.*2d 841. Insofar as a creditor is concerned, "it is within the equitable discretion of the court to deny partition to a purchaser of the husband's interest, leaving the creditor to resort to some other remedy." *Newman, supra,* 70 *N.J.* at 266, 359 *A.*2d 474. Such an alternative remedy may include an accounting for the fair value of the non-debtor spouse's use and occupation, subject to pay-

ments made to preserve the common property. *Id.* at 267, 359 *A.*2d 474.

The present case also involves the interaction between the incidents of a tenancy by the entirety and those of the equitable distribution of marital assets. Tenancies by the entirety, although originally based on the unity of husband and wife at common law, survive as a means of protecting marital assets during coverture and as security for one spouse on the death of the other. *Id.* at 264–65, 359 *A.*2d 474. This concern is particularly compelling when the asset is the family home. The interest in protecting marital unity must be balanced, however, with the rights of a creditor to the assets of a debtor-spouse. *King, supra,* 30 *N.J.* at 413, 153 *A.*2d 49.

Equitable distribution serves to provide a divorced spouse with definite future financial support reflecting that spouse's contribution to the marriage. *Rothman v. Rothman,* 65 *N.J.* 219, 229, 320 *A.*2d 496 (1974). Under principles of equitable distribution, a wife may properly receive the marital home as part of her share of the marital assets. If the assets are subject to valid liens of the husband, they pass to the wife subject to those liens. The mere transfer of an asset from one spouse to another cannot extinguish the valid lien of a third party. 29 *N.J. Practice* (Cunningham & Fishler), *Law of Mortgages* § 131 (1975); *see also* C.J.S. *Mortgages* § 391 (1949). Nothing in the language or legislative history of the statutes pertaining to equitable distribution, *N.J.S.A.* 2A:34–23 and –24, supports a contrary conclusion.

Implicit in our decision is our recognition, moreover, that as between a mortgagee of property held in a tenancy by the entirety and the tenant who has agreed to accept the property in an equitable distribution, the tenant is the more efficient risk bearer. At the time of equitable distribution, only the acquiring tenant knows of the need to make a lien search, a search that is relatively easy and inexpensive. As plaintiff's counsel acknowledged at oral argument, lawyers representing

spouses about to acquire property through equitable distribution often make such searches before accepting title to the property. Consequently, the imposition of the duty to make a lien search does not impose an undue burden on parties to a divorce proceeding.

■ Because of the nature of a tenancy by the entirety, a mortgage given by one tenant can encumber only the interest that tenant can transfer. That interest includes a right to possession or its fair value. It also includes the right to become the sole owner on the death of the other tenant. That right has been described variously as the "right of survivorship," *Newman, supra,* 70 *N.J.* at 259–60 n. 3, 359 *A.*2d 474, or as a right emanating "directly and solely from the original grant or devise," *ibid.* *See King, supra,* 30 *N.J.* at 406, 153 *A.*2d 49 ("a tenant by the entirety has a vested estate, subject to defeasance upon his predeceasing the other spouse * * *.").

■ A tenant in common enjoys a right of possession, but, unlike a tenant by the entirety, not a right of survivorship. Consequently, the transfer of a tenant in common's interest includes the right to possession of an undivided one-half interest of the whole property. That right is subject to partition. The result is that the purchaser of the interest of one tenant in common can force the partition of the estate. *See Newman, supra,* 70 *N.J.* at 261, 359 *A.*2d 474. To this extent, a lien on the interest of a tenant in common provides a lienholder with more valuable security than a lien on the interest of a tenant by the entirety.

■ The mere execution of a mortgage by one tenant by the entirety, moreover, does not entitle the mortgagee to the rights of possession or of ownership on the death of the other tenant. To obtain those rights, the mortgagee must foreclose its lien. The involuntary foreclosure sale of the rights of survivorship and possession of one tenant by the entirety, as a practical matter, may be of little value. Indeed, former Chief Justice Weintraub thought the value of those rights was so minimal and speculative that permitting their sale was neither just nor

economical. *King, supra,* 30 *N.J.* at 413–15, 153 *A.*2d 49 (dissent). The point remains, however, that a levying creditor may "realize some present satisfaction out of the debtor-spouse's assets." 30 *N.J.* at 413, 153 *A.*2d 49.

Under *Interchange State Bank,* divorce would enhance the value of a lien on a debtor-spouse's interest in property held in a tenancy by the entirety. Divorce would convert the tenancy by the entirety to a tenancy in common, in which neither tenant owns a right of survivorship. Following the divorce, the lien on the debtor-spouse's interest would attach to that spouse's undivided one-half interest as a tenant in common. This interest might be partitioned and sold free of the non-debtor spouse's right of survivorship. Freeing the interest of the debtor-spouse from the non-debtor spouse's right of survivorship would enhance the lien beyond its value when the husband and wife owned the property as tenants by the entirety. In short, under *Interchange State Bank,* divorce to some extent would create a windfall for the creditor.

The conversion through divorce of a tenancy by the entirety to a tenancy in common, however, need not enhance the lien of a secured creditor. The non-debtor spouse's right of survivorship, like the restriction on the purchaser's right to partition the property, see *Newman, supra,* 70 *N.J.* at 265–66, 359 *A.*2d 474, will constrain the value of the interest subject to the lien. Termination by divorce of the tenancy by the entirety does not mean that the mortgagee should be allowed to improve its position.

–III–

Consistent with this opinion, the Chancery Division ordered that the Commercial Trust mortgage was subject to the non-debtor spouse's right of survivorship. The effect of that determination was to continue Commercial Trust's pre-divorce position as a mortgagee on Victor's interest, subject to Patricia's right of survivorship. If Commercial Trust should foreclose the mortgage, a purchaser at a foreclosure sale would take

subject to Patricia's right. The net result, as the Chancery Division ordered, is that the Commercial Trust mortgage constitutes a valid lien on an undivided one-half interest of the property, subject to Patricia's right of survivorship. Should Patricia predecease Victor, however, a purchaser at the foreclosure sale of Victor's interest could acquire the entire fee.

■ Before the Chancery Division, Patricia urged that Commercial Trust should be barred from enforcing its mortgage by principles of laches, waiver, and estoppel. The Chancery Division rejected those arguments, the Appellate Division did not consider them, and Patricia did not file a cross-petition raising them in this Court. We are satisfied that even if the issues were before us, the stipulated facts support the ruling of the Chancery Division. Without belaboring the point, Commercial Trust did not consent to or perform any other act indicating an intent to relinquish its rights as a mortgagee. *See Allstate v. Howard Sav. Inst.*, 127 *N.J.Super.* 479, 487–88, 317 *A.*2d 770 (Ch.Div.1974). Patricia does not argue that under the federal bankruptcy law, 11 *U.S.C.* §§ 501–543, the trustee purported to convey Victor's interest free and clear of the Commercial Trust mortgage. As a matter of state law, notice to Commercial Trust, without more, would not constitute its consent to the conveyance free of the lien. Nor should equitable estoppel bar Commercial Trust, which recorded the mortgage and did nothing to mislead Patricia. Under these circumstances, the interests of justice should not estop Commercial Trust from insisting that its mortgage remain of record. Finally, laches should not bar Commercial Trust from enforcing its mortgage. Given the uncertainty in the law about the bank's right to foreclosure and Patricia's failure to prove any prejudice from its delay in foreclosing, see *Lavin v. Hackensack Bd. of Educ.*, 90 *N.J.* 145, 151–52, 447 *A.*2d 516 (1982), we cannot find that the bank's failure to foreclose should bar it from asserting that right in the future.

Before us, Patricia also argues that the appeal is moot because of the Chancery Division's November 2, 1988, judg-

ment on remand ordering the discharge of the mortgage. Related to that issue is the relative priority of the Commercial Trust mortgage over that of The Money Store, which made a loan to Patricia sometime following the entry of the order. Neither of the lower courts considered the issue of the validity of the discharge or the relative priority of the two mortgages. The validity of the discharge centers on a flurry of activity by the parties over several months following the October 22, 1988, decision of the Appellate Division. During this period, The Money Store recorded its mortgage, and Commercial Trust perfected its appeal from the judgment of the Appellate Division. Resolution of the issues involves consideration of the conduct of both parties and possibly that of The Money Store. In the absence of a more complete record, we are unable to resolve either issue. Hence, we must remand the matter to the Chancery Division for resolution of those issues. Also included in the remand is Patricia's argument, raised for the first time on appeal, that the present action is barred. because of the entire-controversy doctrine.

Our decision that the Commercial Trust lien on Victor's interest survives the equitable distribution of the property to Patricia obviously affects the value of that asset in her hands. The resolution of the controversy between her and the bank does not bar her from applying to the Family Part for reconsideration of the equitable distribution of the marital assets or for other relief.

The judgment of the Appellate Division is reversed, the judgment of the Chancery Division is reinstated, and the matter is remanded to that division for further proceedings consistent with this opinion.

*For reversal, reinstatement and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—6.

*Opposed*—None.