912 A.2d 191 (2006)
389 N.J. Super. 219
CAPITAL FINANCE COMPANY OF DELAWARE VALLEY, INC., Plaintiff
v.
Maureen Bell ASTERBADI, PNC Bank, and Botool M. Hilni, Defendants.
Superior Court of New Jersey, Chancery Division, Cape May County.
Decided February 24, 2006.
*193 William F. Saldutti, III, (Dembo & Saldutti,) for Plaintiff.
William Ziegler, (Holston, MacDonald, Uzdavinis, Eastlack, Ziegler & Lodge, P.C.), for Defendant Maureen Bell Asterbadi.
PERSKIE, J.S.C.

OPINION
Defendant Maureen Bell Asterbadi ("Mrs. Asterbadi") brings this motion seeking dismissal of a complaint filed against her by plaintiff Capital Finance Company of Delaware Valley, Inc. ("plaintiff"). Plaintiff brings a separate motion for summary judgment, seeking partition of the property that is the subject of the litigation. Defendants PNC Bank and Batool M. Hilmi (incorrectly identified in the pleadings as "Botool M. Hilni" and hereinafter "Hilmi"), holders of outstanding liens against the property, did not offer support for or opposition to either motion.

Undisputed Facts
On August 17, 1993, Nabil Asterbadi ("Dr. Asterbadi") and Mrs. Asterbadi, then as now married to each other and residing in Washington D.C., acquired fee simple title to property located at 2 111th Street (Block 110.01, Lots 9 and 11.01), Borough of Stone Harbor, Cape May County, New Jersey (the "property"). The property was and remains encumbered by a first mortgage (currently held by defendant PNC Bank) in the approximate principal amount (as of September 16, 2005) of $412,000 and a second mortgage held by Hilmi in an amount of approximately $381,600. The Asterbadis acquired title from the Sheriff of Cape May County, incident to a foreclosure sale, for the recited consideration of $208,000, through a deed issued by the Sheriff to "Nabil J. Asterbadi and Maureen Bell Asterbadi." The affidavit of consideration executed by the Sheriff and appended to the deed identified the grantees as "Nabil J. Asterbadi and Maureen Bell Asterbadi, his wife." The recitals in the mortgage documents associated with the Asterbadis' acquisition recited that the mortgagors were "Nabil J. Asterbadi, M.D. Maureen Bell Asterbadi H/W."[1]
*194 The property is a single-family home located in a very desirable area of Stone Harbor, near the Atlantic Ocean. It has been utilized by the Asterbadis since their purchase as a summer vacation property for their family, and it currently has a value of several million dollars. In addition, the property could be rented and would have a significant income value, possibly in the neighborhood of $50,000 annually.
On October 4, 1993, a creditor obtained a judgment against Dr. Asterbadi (not Mrs. Asterbadi) in the United States District Court in Alexandria, Virginia in the amount of $2,286,009.97. On August 19, 2003, the judgment was docketed with the Clerk of the Superior Court of New Jersey and on September 10, 2003, the creditor issued a warrant in partial satisfaction of the judgment, reducing the claim on the judgment to the sum of $1,706.550.80. Pursuant to a writ of execution issued on the judgment, on May 18, 2005, the Sheriff of Cape May County held a Sheriff's sale of Dr. Asterbadi's interest in the property, at which sale plaintiff purchased Dr. Asterbadi's interest for $551,100.
On July 20, 2005, plaintiff's counsel wrote to Mrs. Asterbadi's counsel, advising that plaintiff had acquired Dr. Asterbadi's interest in the property and stating "[d]ue to the fact that the [p]roperty is a single family home and in light of our previous conversation, it is apparent that [Mrs. Asterbadi] will oppose any reasonable joint use of the above referenced property along with [Plaintiff]." The letter presented plaintiff's "formal demand" for "a formal and full accounting of all income and expenses for the . . . property for the period commencing May 18, 2005 through and including July 31, 2005" and also "the immediate right to inspect the . . . property and have appropriate inspectors review the property and buildings located therein to determine their current condition and status." The letter made no explicit demand for possession of the property, although it did assert a claim for partition.
Through her counsel, Mrs. Asterbadi responded on July 28, 2005, asserting her views as to the respective interests and legal rights of the parties but not directly replying to the demands for an income accounting and an inspection. In an affidavit filed in connection with this motion, Mrs. Asterbadi asserts that she has, at present, "no objection to a reasonable joint use" of the property. On August 26, 2005, plaintiff filed its complaint, seeking partition and sale of the property, a full accounting, and the appointment of a rent receiver. Mrs. Asterbadi filed her answer on October 31, 2005.
In the present motions, plaintiff seeks an order granting, by way of summary judgment, the following relief: (1) an adjudication that plaintiff and Mrs. Asterbadi are each "seized in fee of an undivided one-half interest" in the property; (2) the sale of the property at fair market value; (3) payment of the liens of defendants PNC Bank and Hilmi from the proceeds of the sale; and (4) an equal division of the remaining proceeds of the sale between plaintiff and Mrs. Asterbadi. Mrs. Asterbadi's motion for summary judgment seeks the dismissal of the complaint, on the grounds that (1) plaintiff and Mrs. Asterbadi hold the property as joint tenants with right of survivorship, not as tenants in common; and (2) as there has been no "ouster" of plaintiff, the complaint for partition is premature and must be dismissed, without prejudice. The motions thus present for determination at this point in the proceedings the following issues:
(1) What is the legal status of title to the property? What elements define the interests held by plaintiff and Mrs. Asterbadi?

*195 (2) Is the property appropriately subject to partition at the present time, and if so on what terms?
(3) If the property is not subject to partition, what remedies are available and equitably afforded to the parties at the present time?

Title to the Property
Plaintiff argues that Dr. and Mrs. Asterbadi held title to the property as tenants in common, and that plaintiff's acquisition of Dr. Asterbadi's interest established a tenancy in common between plaintiff and Mrs. Asterbadi, each of them holding "an equal undivided half interest" in the property. Mrs. Asterbadi asserts that she and Dr. Asterbadi held title as tenants by the entirety, and that the acquisition by plaintiff of Dr. Asterbadi's interest created a joint tenancy with right of survivorship between the parties.
A tenancy in common is the holding of an estate by different persons, with a unity of possession and the right of each to occupy the whole in common with the cotenant(s). Burbach v. Sussex Co. Mun. Utilities Authority, 318 N.J.Super. 228, 723 A.2d 137 (App.Div.1999). See also, 13 New Jersey Practice, Real Estate Law and Practice, § 5.6 at 60 (John A. Celentano, Jr.) (Second Edition, 2002) (hereinafter "Celentano"). The interest of a tenant in common may, absent some contractual undertaking, be transferred without the consent of the remaining cotenant(s). Ibid. The percentage interest of any individual tenant in common is determined by the terms of the tenancy. Unlike joint tenancies, tenancies in common generally do not require the intention to create the tenancy to be expressly set forth in the grant of title. Nevertheless, to create a tenancy in common between husband and wife there must be an expression of an intent to do so in the deed. Cadgene v. Cadgene, 17 N.J. Misc. 332, 8 A.2d 858 (Sup.Ct.1939), aff'd. 124 N.J.L. 566, 12 A.2d 635 (E. & A.1940); Celentano, § 5.7, supra at 60-61. A tenancy in common may be terminated by the loss of unity of possession of the cotenants, partition of the estate, or the sale of the property. Normanoch Ass'n v. Baldasanno, 40 N.J. 113, 128, 190 A.2d 852 (1963); Greco v. Greco, 160 N.J.Super. 98, 101-102, 388 A.2d 1308 (App.Div.1978); Gery v. Gery, 113 N.J.Eq. 59, 63, 166 A. 108 (E. & A.1933). See also, Celentano, § 5.10, supra at 63-64.
A joint tenancy with right of survivorship arises by acquisition of an estate by two or more persons with the same interest, accruing by the same conveyance, commencing at the same time, and held by the same undivided possession. If any of these four unities is missing, there is no joint tenancy. Gauger v. Gauger, 73 N.J. 538, 542-43, 376 A.2d 523 (1977). Of most particular import, the "grand incident" of joint tenancy is the right of survivorship; on the death of any joint tenant, title descends to the survivors and continues until there is only one left who takes the entire interest. Celentano, § 5.2, supra at 57. Any joint owner may at any time destroy one or more of the unities, thus severing the interest of the joint tenant and ending the right of survivorship. Steinmetz v. Steinmetz, 130 N.J.Eq. 176, 21 A.2d 743 (Ch.1941). A purchaser upon execution of a joint tenant's interest in an estate becomes a tenant in common with the other joint tenant. Dover Trust Co. v. Brooks, 111 N.J.Eq. 40, 160 A. 890 (Ch.1932); Celentano, § 5.7, supra at 60-61.
N.J.S.A. 46:3-17 provides that a tenancy of two or more persons is to be considered as a tenancy in common as opposed to a joint tenancy "except it be expressly set forth in the grant or devise creating such estate that it was or is the intention of the parties to create an estate in joint tenancy *196 and not an estate of tenancy in common . . ."
A tenancy by the entirety is established when property is held by a husband and wife with each becoming seized and possessed of the entire estate; after the death of one, the survivor takes the whole. Celentano, § 5.13, supra at 67-68. A tenancy by the entirety is available only to husband and wife and is essentially a joint tenancy modified by the common law theory that a husband and wife are one person. Survivorship is the predominant and distinguishing feature of both a joint tenancy and a tenancy by the entirety. Dorf v. Tuscarora Pipe Line Co., Ltd., 48 N.J.Super. 26, 32, 136 A.2d 778 (App.Div.1957). Each tenant by the entirety is a tenant in common with the other during the joint lives of the spouses. Upon the death of a spouse, the survivor is then the sole owner. Newman v. Chase, 70 N.J. 254, 259, 359 A.2d 474 (1976). A tenant by the entirety can alienate his or her right of survivorship, and a judgment creditor of either spouse may levy and execute upon such right. King v. Greene, 30 N.J. 395, 412, 153 A.2d 49 (1959). The law only forbids the involuntary partition of real property owned by the entirety during the existence of coverture. Gery v. Gery, 113 N.J.Eq. 59, 166 A. 108 (E. & A.1933); Platt v. Platt, 93 N.J.Eq. 395, 116 A. 326 (Ch.1922). Real property held by spouses as tenants by the entirety may not be partitioned. By contrast, real property held by tenants in common may be partitioned. Newman, supra, 70 N.J. at 260-61, 359 A.2d 474. It is, however, within the equitable discretion of the Superior Court to deny partition. Id. at 266, 359 A.2d 474.
During coverture, a judgment creditor of a debtor-spouse may levy upon and sell that spouse's right of survivorship as well as his or her undivided one-half interest in the life estate for the joint lives of the tenants. King, supra, 30 N.J. at 412-13, 153 A.2d 49; Freda v. Commercial Trust Co., 118 N.J. 36, 40, 570 A.2d 409 (1990). The sale, however, remains subject to the survivorship interest of the non-debtor spouse. Dvorken v. Barrett, 100 N.J.Super. 306, 308-09, 241 A.2d 841 (App. Div.1968). Insofar as a creditor is concerned, "it is within the equitable discretion of the court to deny partition to a purchaser of the husband's interest, leaving the creditor to resort to some other remedy." Newman, supra, 70 N.J. at 266, 359 A.2d 474. Such an alternative remedy may include an accounting for the fair value of the non-debtor spouse's use and occupation, subject to payments made to preserve the common property. Id. at 267, 359 A.2d 474.
Tenancies by the entirety, although originally based on the unity of husband and wife at common law, survive as a means of protecting marital assets during coverture and as security for one spouse on the death of the other. Freda v. Commercial Trust Co. of New Jersey, 118 N.J. 36, 46, 570 A.2d 409 (1990). This concern is particularly compelling when the asset is the family home. Ibid. The interest in protecting marital unity must be balanced with the rights of a creditor to the assets of a debtor-spouse. King, supra, 30 N.J. at 413, 153 A.2d 49. However, those social purposes are superseded by others when property held in tenancy by the entirety is sold. Freda, supra, 118 N.J. at 46, 570 A.2d 409.
Considering the foregoing, it is evident that Mrs. Asterbadi's argument that a joint tenancy between the parties was created when plaintiff acquired Dr. Asterbadi's interest in the property must be rejected. There is no "unity" of interest between plaintiff and Mrs. Asterbadi; their title did not accrue by the same *197 conveyance or commence at the same time; and they do not jointly hold undivided possession. Accordingly, there is no joint tenancy between plaintiff and Mrs. Asterbadi.
Plaintiff's argument that the parties are tenants in common must also be rejected, at least as asserted. Plaintiff's position is premised on the claim that Dr. and Mrs. Asterbadi held title as tenants in common, and that Mrs. Asterbadi had no right of survivorship that was affected by plaintiff's acquisition of Dr. Asterbadi's interest. This issue turns, then, on the nature of the interest held by Dr. Asterbadi.
There are only two possibilities for the description of the title held by the Asterbadis: they were either tenants in common or tenants by the entirety. The Legislature has determined that a tenancy by the entirety shall be created when "a husband and wife together take title to an interest in real property or personal property under a written instrument designating both of their names as husband and wife." N.J.S.A. 46:3-17.2(a). N.J.S.A. 46:3-17.3, enacted at the same time, provides that "no instrument creating a property interest on the part of a husband and wife shall be construed to create a tenancy in common or a joint tenancy unless it is expressed therein or manifestly appears from the tenor of the instrument that it was intended to create a tenancy in common or joint tenancy." These provisions do not provide explicit guidance here, however, in light of the fact that, in this case, the "written instrument," the 1993 deed from the Sheriff of Cape May County, vests title in "Nabil J. Asterbadi and Maureen Bell Asterbadi." Nothing in the deed suggests, nor does it "manifestly appear," that the deed was intended to create either a tenancy in common or a joint tenancy. Neither, however, does the deed itself "designat[e] both of their names as husband and wife," although, as noted, such designation does indeed appear in some of the related mortgage documents and in the Sheriff's affidavit of consideration appended to the deed.
Unfortunately, in establishing its rules of construction the Legislature did not expressly consider the possibility that a deed would be, as the deed to the Asterbadis indeed is, simply silent on the subject and that a deed intended to create a tenancy by the entirety might not expressly refer to the grantees "as husband and wife." I am satisfied, however, that the most logical application of the two statutory provisions, especially when considered in the light of the "ancillary" reference in the Sheriff's conveyance to the marital status of the Asterbadis, is to determine that the Asterbadis held their interest in the property as tenants by the entirety. Although the statutory provisions do not explicitly so articulate, I believe that the legislative intent was to provide that a conveyance to married persons would be determined to establish a tenancy by the entirety unless the creation of a tenancy in common or a joint tenancy were expressly indicated or manifestly intended by the conveying instrument. Such a construction is most consistent with the overall statutory purpose of the two sections; it is also consistent with cases decided before the adoption (in 1987) of the current statutory framework. See, e.g., Balazinski v. Lebid, 65 N.J.Super. 483, 168 A.2d 209 (App.Div.1961).
Accordingly, I determine that the title held by the Asterbadis upon their acquisition of the property was held as a tenancy by the entirety, and therefore plaintiffs acquisition of Dr. Asterbadi's interest cannot impair Mrs. Asterbadi's right of survivorship. If the status quo continues, Mrs. Asterbadi will, if she is still living, succeed to an undivided fee simple interest *198 in the property at Dr. Asterbadi's death, and plaintiff will similarly succeed to such an interest at Mrs. Asterbadi's death, if Dr. Asterbadi is then living. I consider this arrangement, then, to be a "tenancy in common with a right of survivorship," which, despite its relatively oxymoronic phraseology, is not an unprecedented result. See, e.g., Bauer v. Migliaccio, 235 N.J.Super. 127, 561 A.2d 674 (Ch.Div. 1989), which also dealt with the rights of a judgment creditor who had acquired the interest of the debtor in a tenancy by the entirety. Judge Gibson determined that "upon an execution sale . . . the creditor acquires the right of survivorship of the debtor as well as the interest of the latter in the life estate for the joint lives of both spouses," citing Newman v. Chase, 70 N.J. 254, 260, 359 A.2d 474 (1976), and concluded that "plaintiff's sheriff's deed made him a tenant in common with a right of survivorship with respect to the [property held by the debtor as a tenant by the entirety]." Id. at 133-34, 561 A.2d 674. Inasmuch as plaintiff and Mrs. Asterbadi thus hold their interests in the Property as tenants in common, albeit with a right of survivorship in each of them, the issues relating to plaintiff's claim for partition must then be considered.

Plaintiff's Claim for Partition
Noting (correctly) that the property is not susceptible to division, plaintiff seeks partition, relying in part on the doctrine that "[g]enerally, the right to partition is absolute and does not yield to any condition of hardship, inconvenience or difficulty. Accordingly, the right of partition is a remedial right and should be construed liberally." Swartz v. Becker, 246 N.J.Super. 406, 412, 587 A.2d 1295 (App. Div.1991). Mrs. Asterbadi asserts that, in the absence of an "ouster," the claim for partition must fail as a matter of law, inasmuch as ouster is a prerequisite for partition.
I disagree with Mrs. Asterbadi's argument that ouster is a prerequisite to a claim for partition, and I have found no case so holding. An ouster is a wrongful dispossession or exclusion of a party from real estate. It involves a question of intent. It may be committed by one tenant in common against his or her co-tenant and may be proved by any acts which show an actual intent to exclude the co-tenant permanently from his rights. Mastbaum v. Mastbaum, 126 N.J.Eq. 366, 369, 9 A.2d 51 (Ch.1939). Once an ouster occurs there is no longer common possession. The "primary purpose of a suit for partition is a severance of possessory rights existing in common." Buckis v. Townsend, 100 N.J.Eq. 374, 375, 136 A. 432 (Ch.1927). "The essential thing is that the complainant should have an estate in possession in common with some other person." Kraft v. Fassitt, 132 N.J.Eq. 603, 606, 30 A.2d 574 (Ch.1942). "The purpose of partition between tenants in common is to dissolve the only unity existing between them, to wit, the unity of possession, but that unity cannot be dissolved if it does not exist." Id. at 607, 30 A.2d 574. "Partition was intended to remedy the inconvenience arising from the united and common possession." Ibid.
On cross-motions for summary judgment, questions of intent are ordinarily not capable of resolution, inasmuch as they involve disputed issues of fact. In this instance, however, the nature of the property and its past and intended use make the question of intent moot. The property has been utilized by the Asterbadis as a summer vacation house. Mrs. Asterbadi has indisputably evidenced the intention to continue that use. It is difficult to imagine, in that context, any realistic sharing of possession of the property. *199 Are plaintiff's officers or depositors to be invited for dinner? Will the directors be entitled to spend a weekend and host a barbecue? In indisputable fact, Mrs. Asterbadi's occupancy and use of the property cannot be functionally "shared" with plaintiff, and in the absence of a partition her recent certification expressing a willingness to afford a "reasonable joint use" of the property cannot have any realistic import other than the continued exclusive possession of the property by Mrs. Asterbadi, subject to such financial arrangements relating to the maintenance of the estate as may be appropriate.
In this context, then, the issue of "ouster" becomes moot. I need not decide whether ouster is, indeed, a prerequisite to a partition claim, because I am satisfied that, in every meaningful way, plaintiff has been and will continue to be deprived of any possession or use of the property by Mrs. Asterbadi's occupancy thereof. This is, in my view, sufficient for these purposes to constitute an ouster, and thus the question of partition as a remedy is squarely posed.
The remedy of partition is not automatically available to a purchaser at execution sale of a debtor's interest in property held as tenant by the entirety. Newman v. Chase, supra, 70 N.J. at 262, 359 A.2d 474. While Newman dealt with a "family home," the principal residence of the debtor, his wife and children, and not, as in this case, a summer vacation house, some of the Court's comments are instructive here:
In the case of partition sought by a transferee of the interest of one spouse in the family home, considerations of policy persuade us that a court should be permitted to exercise its equitable discretion in deciding whether or not to allow the remedy. While the original reason for the peculiar characteristics of a tenancy by the entirety was no doubt the common-law concept of the unity of husband and wife . . . the fact that the Legislature has preserved these characteristics indicates that they continue to serve the ends of public policy.
[Id. at 264-65, 359 A.2d 474 (citation omitted).]
In denying partition on the facts of that case, the Newman Court went on to note:
We do not go so far as to hold that a purchaser at an execution sale or from a receiver or trustee in bankruptcy may never be entitled to partition. There is no limit to the value of real property which can be held by husband and wife as tenants by the entirety. Were partition to be automatically denied, there might well be situations in which a debtor would thus be afforded "opportunity to sequester substantial assets from just liabilities." . . . But where, as in the present case, a bankrupt husband lives with his young family in a modest home, we hold that it is within the equitable discretion of the court to deny partition to a purchaser of the husband's interest, leaving the creditor to resort to some other remedy.

Id. at 266, 359 A.2d 474 (citation omitted).
If partition were to be denied, Mrs. Asterbadi would, presumably, continue to possess and occupy the property. In that event, she would be accountable to Plaintiff for the fair rental value of the property, and plaintiff would be accountable to her for the expenses necessarily incident to ownership (real estate taxes, insurance coverage, and long-term capital costs). If the parties agreed to place the property on the rental market rather than continue Mrs. Asterbadi's exclusive possession and occupancy, they would, presumably, collectively determine the details, including *200 arrangements for the listing with a broker or agent, rental prices, terms of leases, and similar questions. In that event, they would of course share equally in the costs and revenues attendant to any such utilization of the property during the joint lives of Dr. and Mrs. Asterbadi.
If, on the other hand, partition were to be ordered, some method of accounting for the value of the respective rights of survivorship of plaintiff and Mrs. Asterbadi would have to be developed. While this might not be an impossible task, it is certainly one that poses significant problems of proof and analysis. Moreover, the effect of such a remedy, even if an "appropriate" share of the proceeds of any partition sale were to be afforded to Mrs. Asterbadi, would be to deprive her of her right of survivorship, a loss for which (on this record, at least) she never assumed any contractual or other responsibility. In view of the fact that other remedies are available and would adequately protect plaintiff's economic interest in the property in the event that partition were to be denied, the fact that the property is not the "family home" that the Newman Court insulated from partition is not by itself dispositive so as to require a partition on these facts. Certainly, in the balancing of the relative equities of the parties, the fact that the property is a vacation site rather than a "family home" is a factor militating in favor of partition, but with other remedies available to plaintiff, partition does not appear to be the appropriate course. The remaining questions thus presented deal with the remedies that are appropriately and equitably to be afforded to plaintiff.

Plaintiff's Remedies
Plaintiff demanded an accounting from Mrs. Asterbadi immediately upon succeeding to its interest. That demand is certainly appropriate. Mrs. Asterbadi shall account to plaintiff for her occupancy and possession of the property from July 20, 2005. The parties shall, by agreement or litigation, establish a fair rental value for the Property, which shall form the basis for Mrs. Asterbadi's financial responsibilities to plaintiff during her possession and occupancy. She shall also provide, as and when requested, any documentation as to the payment of real estate taxes and insurance premiums. To the extent that the parties have agreed on the nature and extent of appropriate insurance coverages, plaintiff shall account to Mrs. Asterbadi for its share of all such costs; these charges, together with the property taxes and any other municipal assessments levied against the property, shall be paid as and when due by Mrs. Asterbadi and plaintiff's share thereof may be credited against any sums that Mrs. Asterbadi owes plaintiff for her possession and occupancy. Mrs. Asterbadi shall also permit, upon reasonable notice and at reasonable intervals, inspections of the property by plaintiff or its representatives. The parties shall, other than in an emergency, obtain consent from each other before effecting any alterations to the property or any capital repairs.
[Balance redacted for publication purposes]
NOTES
[1] The names as so presented were placed on consecutive lines left blank in the lender's form for the identification of the "Borrower."