In re Herbert F. LAWRENCE, Debtor.

Herbert F. Lawrence, Plaintiff,

v.

Michelle Lawrence, National State Bank, its assignees and/or successors in interest, Corestates/New Jersey National Bank, United States of America, Internal Revenue Service, State of New Jersey, Division of Taxation, Township of Holmdel, David Mermelstein, and Provident Savings Bank, Defendants.

Bankruptcy No. 96–32386.
Adversary No. 96–3340.

United States Bankruptcy Court,
D. New Jersey.

Aug. 4, 1999.

Timothy P. Neumann, Broege, Neumann, Fischer & Shaver, Manasquan, N.J., for debtor.

Roberta DeAngelis, Magdalena Schardt, Fox, Rothschild, O'Brien & Frankel, L.L.P., Lawrenceville, N.J., for Michelle Lawrence.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on the counterclaim of Michelle Lawrence, the debtor's spouse, seeking a claim against her estranged husband's bankruptcy estate for equitable distribution or alternatively for a constructive trust based on unjust enrichment, an order that the claim for equitable distribution is nondischargeable, and an award of attorney's and accountant's fees. The court reserved decision on February 4, 1999. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (I) and (O). The following shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

#### a. The divorce case

At the commencement of this bankruptcy case, an action for divorce was pending in the Superior Court of New Jersey, Chancery Division, Family Part. Michelle Lawrence ("Ms. Lawrence") filed a complaint for divorce in the superior court on April 6, 1993 against Herbert F. Lawrence ("the debtor" or "Mr. Lawrence"), who is an attorney. No final judgment of divorce, permanent alimony award or equitable distribution order has been entered. The superior court entered a pendente lite order, however, on November 29, 1993 in which the court ordered the debtor to pay spousal support in weekly installments of $100.00, pay all expenses related to the marital home, maintain medical and life insurance for Ms. Lawrence and pay her car payment, car insurance and medical expenses. Moreover, the order prohibited the sale or other transfer of any assets, excluding the joint savings account for limited purposes, until further hearing. Thereafter, the debtor was ordered to pay support in weekly installments of $175.00 pursuant to the superior court's order dated June 23, 1994.

Beginning in December, 1995, the debtor violated the November, 1993 superior court order by failing to pay car payments, mortgage payments and other expenses related to the marital home. Ms. Lawrence moved for enforcement of the debt-

or's pendente lite obligations in superior court in December, 1996. Pursuant to an order dated January 27, 1997, the superior court ordered the debtor to make monthly payments of $500.00 to Ms. Lawrence on account of the arrears. The order excepted the mortgage from the arrearage payment, however, because of the superior court's mistaken belief that the debtor's bankruptcy filing suspended his obligation to make postpetition mortgage payments as a form of support for Ms. Lawrence.

At the time of trial in this case, a motion was pending in superior court for modification and enforcement of the pendente lite order for support under which Ms. Lawrence is seeking nearly $100,000. for expenses related to her current residence as well as attorney's fees and arrearages. It is this court's understanding that the superior court is awaiting the outcome of this adversary proceeding before making that court's decision on alimony and other matters.

### b. Procedural history of this case

Mr. Lawrence filed a petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code" or "Code") on March 25, 1996 and he remains a debtor-in-possession. No plan has been filed because the parties have been waiting for the outcome of this adversary proceeding.

In August, 1996, the debtor commenced the instant adversary proceeding by filing a complaint seeking entry of an order compelling the sale of the marital home, including Ms. Lawrence's interest, free and clear of liens, and avoidance of all judicial liens on the property. Ms. Lawrence counterclaimed for a determination of the amount and character of the debtor's income, a determination that his obligations under the pendente lite order constitute nondischargeable support, a determination of her claim for equitable distribution, a finding that such claim is nondischargeable, and an award of compensatory and punitive damages. The debtor's complaint was resolved by the consensual sale of the marital residence in February, 1998. Proceeds of the sale were distributed in accordance with an escrow agreement entered into by the parties on February 13, 1998. Therefore, only Ms. Lawrence's counterclaims remain before the court.

In July, 1997, Ms. Lawrence filed a motion for partial summary judgment in this adversary proceeding seeking a determination that the debtor's support obligations under the pendente lite orders are nondischargeable under Code section 523(a)(5), the attorney's and accountant's fees incurred in connection with the divorce proceeding are nondischargeable and the unliquidated claim for equitable distribution is nondischargeable. The court issued a letter opinion dated November 21, 1997 in which the court held that principles of equitable distribution are not applicable to determine the extent of the bankruptcy estate's interest in jointly owned property and that the principles of In re Becker, 136 B.R. 113 (Bankr.D.N.J.1992), would be used to measure the parties' interests in the marital home. The court also found that the debtor's pendente lite obligations, including his obligation to pay the mortgage on the marital residence, were in the nature of support and were therefore nondischargeable under Code section 523(a)(5). The court denied Ms. Lawrence's motion for summary judgment regarding her entitlement to a claim for equitable distribution with respect to all assets other than the marital home and the nondischargeability of a claim for equitable distribution. Ms. Lawrence filed an amended counterclaim on December 4, 1997 seeking the additional remedy of a constructive trust on the marital assets.

The parties entered a stipulation of settlement dismissing count one of the counterclaim in which they agreed that income received by the debtor from his law firm for services rendered is not property of the estate, and that his income shall be determined by the superior court when it enters an award of alimony.

In count five, Ms. Lawrence is seeking a determination that the debtor's pre- and post-divorce complaint tortious conduct caused her damages which are nondischargeable under section 523(a)(6) of the Code. This court relinquished jurisdiction to the superior court to determine the extent of any injury suffered by Ms. Lawrence, after which this court will determine the nondischargeability of any judgment for such injury.

The following issues were presented at trial of the remaining counts in this court: (1) which assets comprised the marital estate at the commencement of the divorce proceeding and what was the total value of the marital estate; (2) whether Ms. Lawrence is entitled to a claim against the bankruptcy estate for equitable distribution and if so, in what amount; (3) whether the claim for equitable distribution is nondischargeable under Code section 523(a)(15); (4) whether Ms. Lawrence is entitled to a constructive trust based on unjust enrichment; and (5) whether Ms. Lawrence is entitled to an award of attorney's and accountant's fees. These matters were tried before the court over five days in December, 1998 and January 1999. The parties submitted written summations which were addressed at a hearing on February 4, 1999 at which time the court reserved decision.

## c. Factual background

Herbert and Michelle Lawrence were married on March 19, 1978. At that time Ms. Lawrence had several years experience as a dental assistant but no formal training or college education. She stopped working in 1981 and she and the debtor adopted three children. After Ms. Lawrence filed the complaint for divorce in 1993 she began working at a dry cleaning business. Ms. Lawrence is currently a full time employee of that business earning seven dollars per hour and she resides in a townhouse owned by her parents. The three children, who are in their teens or twenties, apparently now live with the debtor or are emancipated.

The debtor is licensed to practice law in the state of New Jersey and has been a practicing attorney since 1970. He has a 100% ownership interest in Herbert F. Lawrence, P.A., doing business as the law firm of Lawrence, Leslie & Kain, P.A., ("LLK"). The law firm primarily represents plaintiffs in personal injury and workers compensation cases.

## d. The value of 706 Main Street

The building at 706 Main Street, Asbury Park, from which the law practice is operated is jointly owned by the debtor and Ms. Lawrence. Since the marital residence has been sold, 706 Main Street is the only real property within the marital estate in which Ms. Lawrence holds legal title with the debtor. For a period of time prior to the commencement of the divorce proceeding, the debtor and Ms. Lawrence held a one half interest in the 706 Main Street property and the other half interest was held by a third party, Brenda Perlstein. In 1992, however, the debtor and Ms. Lawrence purchased Ms. Perlstein's interest in the property for $120,000., and Ms. Perlstein took back a mortgage. The debtor and Ms. Lawrence each had the property appraised for purposes of equitable distribution. The debtor's appraisal asserts a market value between $85,000. and $90,000. Ms. Lawrence's appraisal asserts a market value of $145,000. The assessed value is $194,500. Since, however, the transaction acquiring Ms. Perlstein's half interest in 1992 for $120,000. was at arms length, that price is the best evidence of the property's value, and the court therefore determines such value to have been $240,000. at the time the complaint was filed. The debtor has reduced the outstanding mortgage since the filing of the divorce complaint from approximately $86,000. to $10,000.

## e. The value of 39 Takolusa Drive

At the commencement of the divorce proceeding, Ms. Lawrence was residing in

the marital home located at 39 Takolusa Drive, Holmdel which had been purchased by them for $635,000. in 1987. In February, 1998 the marital residence was sold. The net proceeds were distributed in accordance with an escrow agreement entered into by the parties on February 13, 1998. The agreement provided that certain obligations, including the first mortgage, would be paid jointly from the gross sales price without prejudice to Ms. Lawrence's claim that the debtor should be solely responsible for such obligations. After payment of liens, the property yielded equity of $285,793. of which Ms. Lawrence and the debtor each received half. The debtor's share is being retained in his attorney's trust account.

## f. The joint bank account

On March 8, 1993, approximately one month before filing the divorce complaint, Ms. Lawrence transferred $140,000. from an account held jointly with the debtor to an account in her name alone. From that account Ms. Lawrence paid a joint obligation to the IRS and a business debt to Joseph Crudup. She also used approximately $36,000. from the account to meet her personal expenses as well as the expenses related to the marital property and to the support of her children from March 1993 until entry of the pendente lite order for support in November 1993. In addition to the expenses related to the marital residence, the November 1993 order required the debtor to pay Ms. Lawrence's car payments, car insurance, medical insurance and medical expenses. Thereafter, due to failure by the debtor to make payments required by that order, Ms. Lawrence withdrew more funds to make ends meet. Since the filing of the bankruptcy case this court has authorized further withdrawals by Ms. Lawrence, without prejudice to the debtor's claims to that fund. The balance in the account at trial was $4,878.

The November 1993 order also prohibited the transfer or dissipation of any marital assets pending final hearing, except the right to use the remaining funds from the joint savings account for specifically defined purposes. The debtor admitted to violating the no-transfer provision of the order in a multitude of transactions involving the purchase and sale of real property and vehicles and liquidation of individual retirement accounts ("IRAs"). Ms. Lawrence also violated the order by withdrawing funds from the joint checking account, but in her case those actions were taken to pay necessary living expenses due to the debtor's failure to pay court-ordered support.

## g. The value of the parties' vehicles

The parties stipulated that at the commencement of the divorce, they owned five automobiles: a 1987 Corvette, a 1988 Isuzu Trooper, a 1989 Geo Tracker, a 1976 Lincoln Continental, and a 1992 Geo Storm. The debtor testified at trial, however, that although the Lincoln was in his possession for a period of time, it was owned by a third party. Ms. Lawrence held title to the Geo Storm which is still in her possession. In the joint stipulation of facts, the debtor acknowledged transfer of the Corvette, the Trooper, the Tracker and the Lincoln in violation of the superior court order. Using the NADA Book, which is a recognized authority on the value of used automobiles, Victor Haas ("Haas"), Ms. Lawrence's forensic accountant, valued the Trooper at $8,000., the Tracker at $6,000. and the Storm at $7,775. In June, 1994, prior to the debtor's transfer of the Corvette, Ms. Lawrence had the Corvette appraised at a value of $14,000. The court finds these to be the values of the subject vehicles. No evidence was offered as to the value of the Lincoln Continental.

## h. The value of the parties' IRAs

The debtor and Ms. Lawrence had IRAs in their names at the commencement of the divorce. Ms. Lawrence had an IRA valued at $5,375. The debtor had three IRAs in his name. He concedes that he

liquidated the three IRA accounts without court approval in violation of the November, 1993 superior court order. The IRAs with Oppenheimer and American Funds were redeemed for $53,820. An IRA with Wisconsin National Life Insurance Company was also liquidated. At the commencement of the divorce proceeding, it had a cash surrender value of $4,294.

### i. The parties' incomes

Prior to commencement of the bankruptcy, the debtor did not receive a monthly salary from the law firm. Instead, his personal expenses were paid from the LLK business operating account. Upon filing of the bankruptcy, he began receiving a monthly draw and opened a debtor-in-possession ("DIP") account.

Before the bankruptcy, the firm's cash receipts, whether or not recorded in the cash receipts ledger, were paid directly to the debtor. In her deposition testimony, LLK's office manager, Lisa Carroll, testified that although a large percentage of the firm's income was paid from insurance companies, sometimes clients would pay the debtor in cash. (Exh. D–62). Unless brought to her attention by a client or the debtor directly, Ms. Carroll had no knowledge of cash payments received by the debtor. She recalled two occasions on which she responded to clients' concerns that their ledger cards did not reflect cash payments made directly to the debtor.

Prior to the commencement of the bankruptcy, rental payments from tenants at the 706 Main Street property, which is owned by the debtor and Ms. Lawrence, were deposited in LLK's operating account. Since the bankruptcy, those rents have been deposited in the debtor's DIP account.

Business generated by LLK and rent from the 706 Main Street property were not the only sources of income for the debtor prior to and after the commencement of the divorce proceeding. The debtor also held a one half interest in Lopec Corporation ("Lopec"), a company orga-

nized in the mid 1980s for the purpose of buying lots and building or repairing realty for sale. Linda Valentine owned the other half interest in Lopec. Ms. Carroll had no knowledge, however, of any deposits of rent from Lopec properties being made into the firm's operating account.

In May, 1993, Ms. Lawrence retained Haas to determine the marital estate as of the April 1993 divorce filing and to measure the debtor's income and the value of his law practice. Due to the debtor's tardy preparation of tax returns and his incomplete records, Haas required more than two years to value the marital estate. His efforts were further stymied by the debtor's failure to take a monthly salary from the law firm and his practice of paying personal expenses from the firm's operating account. The parties' 1993 tax return was prepared by the debtor in July, 1995. Their 1994 tax return, of which three drafts were needed after Haas pointed out substantial omissions of income in the first two drafts prepared by the debtor's accountant, was first prepared in July, 1995. His 1995 tax return was not prepared until June, 1997. His personal income was reported on his law firm tax returns and his personal returns reflected business income but no salary.

The debtor testified that no tax returns were filed for Lopec after 1992. In a letter dated July 10, 1995 from debtor's attorney, he stated that the debtor did not maintain books or records on Lopec because it was losing money. (Exh. D–70). However, the debtor failed to provide any documentation to support that averment. Haas estimated that between 8 to fifteen properties were owned by Lopec, although he was unable to accurately trace whether the properties were titled in the name of the debtor, Ms. Valentine, Lopec or Val-ly Corp., successor to Lopec.

The parties stipulated that the debtor's income from his law practice is at least $157,000. per year, and the court finds that his income usually exceeds $200,000. per

year. Moreover, as will be explained hereinafter, the debtor has not reported all of his income. As previously noted, Ms. Lawrence earns $7.00 per hour, which on the basis of a forty-hour work week and fifty weeks per year equals income of $14,000. per year.

**j. The value of the law practice**

Until October, 1992, the debtor and his partner Paul Kapalko each owned fifty percent of the law firm. The debtor then bought out Kapalko for $75,000. plus $43,500. for Kapalko's share of fees earned, for a total of $118,500. Haas had no other documentation with which to value the firm due to the debtor's failure to keep sufficient records. Consequently, Haas valued the debtor's practice at two times the buyout price or $237,000. as of the commencement of the divorce. Since the buy-out agreement was an arms length transaction, the court finds the value of the practice to be $237,000.

**k. The debtor's business real estate interests and transactions**

At the time the divorce complaint was filed, the debtor had an ownership interest in the following properties:

| Property | Value |
|---|---|
| 1007 Emory Street | $14,000. |
| 111 Vermont Terrace | $56,300. |
| 216 Grafton Terrace | $36,300. |
| 1111 Summerfield Avenue | no evidence presented |
| 612 Prospect Street | no evidence presented |
| Shark River Hills | no evidence presented |

In addition, the debtor owned a half interest with Linda Valentine in property on Third Avenue in Asbury Park which apparently had negative equity since the debtor had to contribute $17,892. at closing on sale of that property. Another property known as the Sewell property was flooded and irreparably damaged by tenants.

Despite discovery requests, the debtor failed to provide Haas with documentation regarding the income and expenses generated by the Prospect Street and Summerfield Avenue properties. The debtor also failed to produce any documentation reflecting the value of the three lots in Shark River Hills. Haas therefore did not ascribe a value to those properties. The Vermont Terrace and Grafton Terrace properties were valued at $56,300. and $36,300. respectively, according to Atlantic City tax assessments.

The debtor's business real estate interests were principally in the form of his half-interest in Lopec Corporation, with Linda Valentine as the other shareholder. The debtor stated that he and Linda Valentine divided the Lopec properties between themselves in an effort to sell the properties and share alleged losses equally. Despite this alleged agreement, however, Linda Valentine received the only admitted profits when she sold the Emory Street property in July 1996 for a profit of more than $26,000. The debtor claims he did not receive any of the proceeds. By contrast, in April, 1996, the debtor sold the Third Avenue property at which time he paid $17,892. from the law firm's trust account to satisfy an outstanding mortgage. The debtor contends the payment was made from earnings; however, there is no record of the source of the funds for this postpetition payment. Moreover, his monthly reports to the bankruptcy court do not reflect this payment. · Further, the court does not believe that it was simply bad luck that Valentine received the only known profits and the debtor paid the only known loss on the sale of Lopec properties. The court has no doubt that the debtor's testimony about Lopec's affairs and the absence of records is incomplete and only truthful to the extent compelled by Haas's discoveries.

**l. Debtor's personal real estate interests and transactions**

The debtor conducted a number of personal real estate transactions unrelated to Lopec after the divorce was initiated for which the sources of the purchase money and the disposition of the sale proceeds are untraceable in part. On April 16, 1993, ten days after Ms. Lawrence filed the divorce complaint, the debtor purchased Unit 103,

a condominium at One Scenic Drive, Highlands, for $62,500. cash. The debtor provided no documentation evidencing the source of the funds used for such purchase. Haas' review of the trust account records revealed, however, certain deposits made in the firm's trust account in March, 1993 from settlement of a personal injury case. A portion of the funds remaining after payment of the client's share of the proceeds was subsequently transferred to the firm's operating account. However, approximately $60,000. of the fee earned was never transferred to the firm operating account, and Haas concluded that those funds were used to purchase Unit 103. Moreover, the $60,000. was apparently never reported as income to either the debtor or the firm, as the debtor's accountant prepared tax returns for both the debtor and the firm based upon the firm's operating account.

Similarly, the debtor purchased the adjacent condominium, Unit 104, on June 29, 1993 for approximately $95,000. of which $69,000. was cash. No documentation was produced by the debtor as to the source of those funds either.

In 1995, the debtor sold Units 103 and 104, taking back mortgages on both properties. No documentation of the sale of Units 103 and 104 was available for Haas' review, however, because a sewer allegedly flooded the basement in which the debtor kept the records and destroyed that documentation. Documentation of the sales and the debtor's interest in these mortgage receivables was therefore not produced. According to the debtor, he sold Unit 104 to a corporation owned by Joseph Crudup, a mortgage broker who is a friend and business associate of the debtor. The debtor testified, however, that he has not received any monthly mortgage payments on Unit 104 from Crudup. The purchasers of Unit 103 have been making regular monthly mortgage payments to the debtor since its sale. The debtor's 1995 tax return indicates that Unit 103 was sold on June 6, 1995. The mortgage payments on Unit 103 have been deposited in the DIP account since the commencement of the bankruptcy proceeding in 1996. However, the mortgage payments are unaccounted for during the period from the sale of Unit 103 in June 1995 until the opening of the DIP account in 1996. The firm's office manager, Lisa Carroll, who handles all of the firm's financial records, testified that she was unaware of any deposits of mortgage payments in the firm's accounts and the debtor testified that he had no recollection of what happened to the payments. Nonetheless, as Units 103 and 104 were purchased with marital assets, the mortgage receivables generated upon their sale also constitute marital property.

On October 3, 1994, one and a half years after the divorce was initiated, the debtor purchased condominium Units 1102 and 1103 at One Scenic Drive, Highlands with approximately $93,000. cash. The purchase of those units could not have been funded by the sale of Units 103 and 104 since the closing on Units 1102 and 1103 occurred several months before the sale of Unit 103, and sale of Units 103 and 104 both generated mortgage receivables. The debtor contends that those units and the other units purchased after the divorce complaint were purchased with post-divorce complaint earnings; however, he failed to substantiate that position. Review of the debtor's business accounts in the year and a half following the divorce complaint evidenced insufficient income to fund the cash purchase of Units 1102 and 1103.

The debtor sold Units 1102 and 1103 on October 5, 1995 and purchased a house at 1051 Coolidge Avenue, Whiting on October 6, 1995 for $210,000. The purchase of the Whiting property was funded in part by financing and in part by cash of $143,-562.42. Ninety thousand of the cash came from the sale of Units 1102 and 1103. The debtor testified that the balance of the cash came from his personal bank account at Dime Savings, noting that a withdrawal of $65,563. was made on the date the Whit-

ing property was purchased. There is no evidence, however, that the funds in the Dime account came from post-divorce complaint earnings.

### m. Factors to be considered in equitable distribution of property

N.J.Stat.Ann. 2A:34–23.1 lists factors which the court shall consider in making an equitable distribution of property. The statute requires that "the court shall make specific findings of fact on the evidence relative to all issues pertaining to asset eligibility or ineligibility, asset valuation, and equitable distribution, including specifically, but not limited to, the factors set forth in this section." Therefore, in addition to the findings set forth above, the court makes the following findings as to the factors set forth in N.J.Stat.Ann. 2A:34–23.1.

(1) *The duration of the marriage.* The parties were married for approximately fifteen years before they separated.

(2) *The age and physical and emotional health of the parties.* Ms. Lawrence was 25 years old when the parties married in 1978, making her approximately 46 years old now. There was no testimony as to the debtor's age, but he appeared to be approximately the same age as Ms. Lawrence or slightly older. There was no testimony as to any impairments to the physical or emotional health of either party, except that Ms. Lawrence has a learning disability.

(3) *The income or property brought to the marriage by each party.* No evidence was offered as to any property that the parties brought to the marriage. As to income, Ms. Lawrence was working as a dental assistant earning between $120. and $175. per week. The debtor had been an attorney for eight years at the time of the marriage, but no evidence was presented as to his income at the time of the marriage.

(4) *The standard of living established during the marriage.* The parties enjoyed a very comfortable standard of living during the marriage. The debtor's income enabled them to purchase a residence for $635,000., a vacation condo in Royal Palm Beach, Florida, and luxury cars including a Rolls Royce. They took expensive vacations and employed live-in help at certain periods.

(5) *Any written agreement made by the parties before or during the marriage concerning an arrangement of property distribution.* No evidence was offered as to any such agreements.

(6) *The economic circumstances of each party at the time the division of property becomes effective.* The debtor's income is difficult to measure with precision because he does not report all of it and he files his income tax returns late. As of the trial in this case earlier this year, he had not yet filed his 1997 tax returns, and his monthly operating reports of income and expenses filed in this case have contained glaring omissions as pointed out by Ms. Lawrence during the trial. The debtor testified that his earning capacity has been reduced by changes in the law in his personal injury field, but he offered no evidence to corroborate that testimony, and the testimony was not credible. The court finds that the debtor continues to have the ability to earn more than $200,000. per year. As to his debts, the mortgage on the marital residence was paid upon sale of the residence, and the mortgage on his law practice's office building has been paid down during the bankruptcy case to approximately $10,-000. He does, however, still owe approximately $200,000. to the IRS and the State of New Jersey for taxes from 1993 through 1995, and he scheduled other unsecured prepetition claims of approximately $398,-000. to parties other than Ms. Lawrence. Ms Lawrence claims he owes her approximately $100,000. in alimony arrears, which is being adjudicated in the superior court. She also makes the claim for equitable distribution which is the subject of this decision. So although the debtor's income

is substantial, his debts are also substantial.

As for Ms. Lawrence, she earns $7.00 per hour working for a dry cleaner and she lives in a townhouse owned by her parents. No evidence was offered that Ms. Lawrence has any debts. No evidence was offered that she owns any property other than her interest in the marital assets. She has a very limited ability to earn a living.

(7) *The income and earning capacity of each party.* This has been noted above. Ms. Lawrence is a high school graduate, but she has a learning disability and there is no evidence indicating that her earnings potential is significantly greater than her present income. By agreement of the parties she quit her job after their marriage to raise their three adopted children, and she was a full-time homemaker for approximately twelve years before the divorce complaint.

(8) *The contribution by each party to the education, training or earning power of the other.* No evidence was offered as to these factors.

(9) *The contribution of each party to the acquisition, dissipation, etc. in the amount or value of the marital property, as well as the contribution of a party as a homemaker.* The debtor generated the income from which all property was acquired during the marriage. Ms. Lawrence provided a home for him for fifteen years while he was acquiring that property. As to dissipation, see (11) below.

(10) *The tax consequences of the proposed distribution to each party.* No evidence was offered as to this factor.

(11) *The present value of the property.* Although the present value of the property relevant, so also is the value of the property as of the date the divorce complaint was filed. *Scavone v. Scavone,* 243 N.J.Super. 134, 137, 578 A.2d 1230 (App.Div.1990). In addition, if the property existed as of the filing of the complaint but no longer exists, the reasons for the loss are relevant. If the property has been dissipated, the court must take that into account. N.J.Stat.Ann. 2A:34–23.1(i). "Dissipation may be found where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship was in serious jeopardy." *Kothari v. Kothari,* 255 N.J.Super. 500, 506, 605 A.2d 750 (App.Div.1992).

The marital estate is as follows:

| Assets | Value as of 4/6/1993 (date of divorce complaint) | Value as of trial |
|---|---|---|
| Vehicles: | | |
| 1976 Lincoln Continental | no evidence offered | sold by debtor |
| 1987 Chevrolet Corvette | $14,000. | sold by debtor |
| 1988 Isuzu Trooper | $8,000. | sold by debtor |
| 1989 Geo Tracker | $6,000. | sold by debtor |
| 1992 Geo Storm Hatchback | $7,775. | no evidence offered |
| Cash: | | |
| Joint bank account | $140,000. | $4,878. |
| Herbert Lawrence, undisclosed | $311,498. | expended by debtor |
| Real Estate: | | |
| 39 Takolusa Dr., Holmdel | $285,793. net sale proceeds | $285,793 net sale proceeds |
| 709 Main St., Asbury Park | $240,000. | $240,000. |
| 1007 Emory St., Asbury Park | $14,000. | sold by debtor |
| 111 Vermont Ter., Atlantic City | $56,300. | $56,300. |
| 216 Grafton Ter., Atlantic Ctiy | $36,300. | $36,300. |
| 1111 Summerfield Ave., Asbuty Park | no evidence offered | no evidence offered |

| Assets | Value as of 4/6/1993 (date of divorce complaint) | Value as of trial |
|---|---|---|
| 612 Prospect Street, Asbury Park | no evidence offered | no evidence offered |
| Shark River Hills, Neptune | no evidence offered | no evidence offered |
| Business Interests: | | |
| Herbert F. Lawrence, P.A. | $237,000. | $237,000. |
| Lopec, Inc. | no evidence offered | no evidence offered |
| IRAs: | | |
| Michelle Lawrence | $5,375. | no evidence offered |
| Herbert Lawrence | $53,514. | expended by debtor |
| Annuity policy-cash value: | | |
| Herbert Lawrence | $4,294. | no evidence offered |
| Total Assets | $1,419,849. | $860,271. |

| Liabilities [1] | Amount as of 4/6/1993 | Amount as of trial |
|---|---|---|
| Mortgage on 706 Main St., Asbury Park | $90,000. | $10,000. |
| Amount due P. Kapalko for buy-out of ½ interest in LLK | $75,000 | no evidence offered |
| Total liabilities | $165,000. | $10,000. |
| Net value of marital estate | $1,254,849. | $850,271. |

(12) *The need of a parent who has physical custody of a child to own or occupy the marital residence and to use or own the household effects.* The marital residence has been sold and any personal property not listed above has been divided by the parties. As previously noted, the three children, who are in their teens or twenties, apparently live with the debtor or are emancipated. Neither party offered evidence that the children's needs are relevant to equitable distribution.

(13) *The debts and liabilities of the parties.* These have been noted above.

(14) *The need for a trust fund for medical or educational costs for a spouse or children.* Neither party offered evidence that this factor is relevant to equitable distribution.

(15) *The extent to which a party deferred achieving his or her career goals.* Neither party offered evidence that this is relevant to equitable distribution.

(16) *Any other factors that the court may deem relevant.* In this category the court finds as a very substantial factor that the debtor has repeatedly concealed assets, concealed income, concealed records, and testified untruthfully regarding a number of those matters. Some of the more egregious instances are as follows: [2]

(a) The debtor flatly stated in a request for discovery of bank accounts in 1995 during the divorce case that "there are no personal bank accounts in the name of Herbert F. Lawrence since the separation. Any bank accounts were left in the name of [Ms. Lawrence] at the time of separa-

---

1. Neither party offered any evidence that any of the debtor's scheduled in the bankruptcy case should be considered liabilities of the marital estate as of the date of the divorce complaint.

2. Ms. Lawrence alleges that the debtor also made false statements in his Case Information Statement filed in the superior court divorce case. This court declines to make any findings as to that, deeming it more appropriate for the superior court to make such findings if that court decides to do so.

tion." (Exhibit D–69 dated May 31, 1995). However, the debtor in fact had at that time a bank account in his name at Dime Savings Bank with a balance as of May 23, 1995 of $58,973.32. Moreover, the debtor admitted at trial, after the evidence of this account was introduced, in an admission of the further falsity of the quoted statement from Exhibit D–69, that he had virtually always had a personal bank account since the separation.

(b) The debtor's bankruptcy petition was filed on March 25, 1996. It was not until August 24, 1998, however, after being confronted by Ms. Lawrence with evidence of his failure to list certain assets in his schedules of assets filed with this court, that the debtor amended his schedules to add his interest in parcels of real property at 111 Vermont Terrace, Atlantic City and 216 Grafton Terrace, Atlantic City, and personal property in the form of two mortgages which he received on the sale of Unit 104 at One Scenic Drive, Highlands in October 1994 and the sale of Unit 103 at the same location in 1995.

(c) The debtor has omitted substantial items of income and expenses from the monthly operating reports ("MORs") which he is obligated to file with the court and the U.S. Trustee as a debtor-in-possession. He admitted that the MORs do not reflect any cash receipts from his law practice; mortgage payments received of $511.20 per month; proceeds of settlement of certain personal injury cases which he received; purchases and sales of jewelry as inventory in a sideline business he has; and $35,000. paid to the IRS from his firm's operating account rather than from his debtor-in-possession account. Although the debtor also testified that he deposited all receipts in his DIP account, the discrepancies in his MORs make it difficult to verify that allegation. Moreover, the amount of the debtor's income is relevant to equitable distribution, to alimony, and to the terms of any plan of reorganization the debtor may propose. The understatements in his MORs make it appear that the debtor's income is less than it actually is for these purposes.

(d) One particular instance of the debtor's concealment of an income-producing asset is his failure to disclose the mortgage that he took back from the Schoellners on the sale of Unit 103 in 1995. In addition to his failure to schedule the mortgage as an asset, and his failure to list the mortgage payments of $511.20 per month as income, the debtor testified at his deposition in this adversary proceeding on November 11, 1996 that he did not recognize the name Schoellner. Since he had just sold Unit 103 to the Schoellners in 1995 and was receiving a mortgage check from them every month, it is obvious that the subject deposition testimony of the debtor was untruthful and that he intentionally concealed the mortgage from the court and Ms. Lawrence, adding it to his schedules only after Ms. Lawrence confronted him with proof of the existence of the mortgage.

(e) When the debtor wished to purchase a new residence in Brick, New Jersey, he used his friend Joseph Crudup, a mortgage broker, to put through a mortgage application in the name of his girlfriend's 23–year–old son, Noel Cruz. However, Cruz made no decisions regarding the purchase, and contributed no part of the $73,000. cash paid at closing. The mortgage loan was granted by Greenpoint Mortgage to Cruz, and title was taken in his name on November 11, 1997. Fifteen days later, Cruz deeded the property to the debtor. By so doing, the debtor, Cruz and Crudup perpetrated a fraud on Greenpoint Mortgage, representing that the borrower and purchaser was Cruz when in fact it was the debtor. The debtor probably intended as well to conceal his ownership of this property from Ms. Lawrence and his other creditors by this device if he could have gotten away with it, but he was discovered.

(f) The debtor testified that there were no books and records available for Lopec, the real estate investment corporation he owned jointly with Linda Valentine. He

also testified that Lopec filed no tax returns because it didn't make a profit. At trial, however, when confronted with evidence that Lopec had filed New Jersey state tax returns at least through 1996, the debtor claimed no knowledge as to such returns. The court finds that the debtor's testimony that no books and records exist for Lopec lacks credibility, and that he has concealed those books and records to avoid disclosing the details as to the value of his interest in Lopec.

(g) There is evidence that the debtor uses his law firm's trust account to conceal income. In one instance mentioned above, the debtor's law firm earned a fee of approximately $83,000. for a settlement of a $250,000. claim in the Barna case. When the $83,000. fee was disbursed from the trust account, however, only $23,000. was transferred to the LLK business account. The balance of $60,000. was paid directly to the seller of Unit 103 when the debtor purchased it, thereby failing to leave any record of that $60,000. as income of LLK or the debtor. The debtor's accountant testified that if funds belonging to Mr. Lawrence were disbursed directly from the trust account to third parties, the accountant would not have included them in income on the tax returns.

On another occasion involving the LLK trust account, the law firm office manager testified that the debtor directed her to deposit $9,000. received on the sale of a vehicle owned by the debtor into the trust account so it wouldn't be picked up as income. It must be mentioned, however, that it is unclear whether these sale proceeds would be considered income for tax purposes.

(h) The debtor also used the LLK business account to pay personal expenses, rather than paying those from his personal DIP account, thereby concealing the full extent of his personal income and expenses. In one instance, he paid the IRS $37,846. from his business account for his personal liability for 1995 taxes. The payment was not reported in his MORs filed with the court, resulting in concealment of the fact that he had earnings available to him in the LLK operating account to pay such an item.

This evidence reeks of fraud upon the court and the creditors. The concealment of assets and income and the blatantly false testimony reveal that the debtor is a person who has no problem at all with being egregiously dishonest about his financial affairs with courts, taxing authorities and his creditors as it suits his purposes. By hiding some business records, by keeping others in an intentionally confusing manner, and by using business and trust accounts for personal purposes, the debtor has skillfully succeeded in making it difficult to gain a clear understanding of his income and assets. Since Ms. Lawrence's limited resources imposed constraints upon the extent of investigation that her forensic accountant was able to complete, the court has little doubt that there are other, unproven instances of Mr. Lawrence's conduct similar to those stated above.

### Ms. Lawrence's Position

Despite the court's holding, over Ms. Lawrence's objection, that principles of *In re Becker* apply to determine what constitutes property of the bankruptcy estate, Ms. Lawrence argues that such principles nonetheless do not prevent allowing a claim against the estate for equitable distribution. Although section 544(a) of the Code confers the status of hypothetical lien creditor upon the debtor-in-possession, thereby subordinating the spouse's claim for equitable distribution, Ms. Lawrence insists that such status does not grant the debtor-in-possession the authority to eliminate the unsecured claim in its entirety. Therefore, she contends that state law principles of equitable distribution apply to value her claim.

In measuring a claim for equitable distribution, Ms. Lawrence notes that each spouse's marital contributions must be considered. Similarly, each spouse's dissi-

pation of the marital property must also be factored into the property distribution. Contending that the debtor dissipated marital property of significant value, she supports her claim by emphasizing that monetary awards are typically granted in lieu of distributions in kind where dissipation has occurred. She is therefore seeking an equitable distribution claim totaling 75% of the marital estate including all assets transferred or dissipated after the filing of the divorce complaint. Pursuant to Code section 523(a)(15), Ms. Lawrence contends that this claim for equitable distribution is nondischargeable. If the court denies her claim for equitable distribution, she is alternatively seeking a constructive trust for at least fifty percent of the value of all assets dissipated in violation of the November, 1993 order.

New Jersey law authorizes an assessment of counsel fees and expert witness fees against one of the parties in matrimonial matters including claims for divorce, support, alimony and equitable distribution. Ms. Lawrence contends that she is entitled to an award of counsel fees and accountant's fees based on her inability to pay, the debtor's substantial income, the debtor's bad faith and disregard of court orders, and the · disparity in their respective standards of living. Furthermore, she contends that such an award is nondischargeable under section 523(a)(5) of the Code, as the award is intended to serve a support function and place the parties on equal footing throughout the pendency of the divorce.

### The Debtor's Position

The debtor argues that all of his assets were subject to the hypothetical lien of Code section 544 as of the commencement of the bankruptcy since no award of equitable distribution had been entered by the petition filing date. Thus, the debtor argues that even if he had dissipated marital assets after commencement of the divorce, all assets remaining as of the petition filing date are encumbered by the hypothetical lien of Code section 544 and his insolvency

therefore immunizes his estate from a claim for equitable distribution.

The debtor further argues that the remedy of a constructive trust is not available in light of Code section 544. The debtor also denies that Ms. Lawrence is entitled to an award of fees.

### CONCLUSIONS OF LAW

#### I.

■ The Bankruptcy Code defines what constitutes property of the bankruptcy estate. 11 U.S.C. § 541. The bankruptcy estate essentially consists of all legal or equitable interests of the debtor in property as of the commencement of the case, *see* 11 U.S.C. § 541(a)(1), with certain exceptions. As a general rule, state law determines what those property interests are. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In this case, New Jersey law is the applicable state law.

■ The purpose of equitable distribution is to divide property acquired during the marriage in a manner that is just under the circumstances of the case. *Painter v. Painter*, 65 N.J. 196, 209, 320 A.2d 484 (App.Div.1974). N.J.Stat.Ann. 2A:34–23.1 creates a "rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married." *Id.* Although principles of equitable distribution generally attribute little or no significance to which of the parties holds legal title to marital property, *see D'Arc v. D'Arc*, 164 N.J.Super. 226, 395 A.2d 1270 (Ch.Div. 1978), *aff'd* 175 N.J.Super. 598, 421 A.2d 602, *cert. denied* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350, the status of legal title assumes great significance if a creditor of the title holder obtains a judicial lien on his or her interest in the property before the judgment of divorce. Under *Freda v. Commercial Trust Co.*, 118 N.J. 36, 46, 570 A.2d 409 (1990), the judgment creditor's rights in such property are supe-

rior to the rights of the spouses in such property if the lien is created prior to the judgment of divorce. Conversely, if the judgment of divorce distributes the property prior to creation of a lien by a creditor of one spouse, such lien does not attach to the property transferred to the other spouse under the divorce judgment. *Interchange State Bank v. Riegel*, 190 N.J.Super. 139, 144, 462 A.2d 198 (App. Div.1983).

 Under Bankruptcy Code sections 544(a)(1) and (2), a bankruptcy trustee, and hence a debtor-in-possession as well under Code section 1107, has the status of a judgment creditor who levies on the debtor's property as of the date the bankruptcy petition is filed. *In re Blease*, 605 F.2d 97 (3d Cir.1979). Under *Freda*, the trustee's rights in the debtor's property are superior to those of the nondebtor spouse. *In re Becker*, 136 B.R. 113, 118 (Bankr.D.N.J.1992). Where, therefore, a bankruptcy petition of a spouse holding legal title to marital property precedes a divorce judgment distributing such property, the rights of the other spouse not sharing legal title are inferior to those of the title holder's trustee.

 This conclusion follows from the interplay of the Bankruptcy Code and state law in determining property rights. If New Jersey law provided that the rights of a spouse with an equitable interest in property legally titled in the other spouse are superior to the rights of the title holder's judgment creditors, the avoiding powers of Code section 544 would not prevail over such equitable interest. In *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982), the court of appeals held that Code section 544(a)(3) did not permit a trustee to avoid the equitable interest of a purchaser in possession of real property under an unrecorded contract because the notice provided by the purchaser's possession imposed an obligation on a subsequent purchaser under Pennsylvania law to inquire into the nature of the possessor's interest in the property. *Id.* at 16. By contrast, where

no such notice through possession defeats the rights of subsequent purchasers under New Jersey law, the court of appeals held in *In re Bridge*, 18 F.3d 195 (3d Cir.1994), that Code section 544(a)(3) entitles the trustee to avoid the equitable lien of an unrecorded mortgage. *Id.* at 204. As previously noted, New Jersey law also provides that transfers of property interests under equitable distribution are subject to existing liens, including judicial liens, *see Freda v. Commercial Trust Co., supra*, and there is no notice concept or other theory which enables the non-titled spouse to trump the rights of such creditors under New Jersey law.

## II.

 The debtor argues that it follows from the foregoing that except for any assets proven to have been intentionally dissipated, Ms. Lawrence is not entitled to any monetary claim in lieu of equitable distribution of any property not titled in her name. That argument is incorrect. The avoiding powers of Code section 544 establish priorities of rights in particular assets. Those powers do not eliminate monetary claims. A creditor whose lien is avoided by the trustee's superior rights under Code section 544 still has an unsecured claim against the estate. See Code section 502(h). The equitable interest of a nondebtor spouse arising under state law from such spouse's contribution to the acquisition of property titled in the debtor gives rise to a monetary claim if the property itself cannot be transferred to the nondebtor because bankruptcy has occurred. N.J.Stat.Ann. 2A:34–23 states that "where a judgment of divorce ... is entered the court may make such award or awards to the parties ... [as is appropriate] to effectuate an equitable distribution" of the property acquired during the marriage. It is basic that monetary claims can be awarded in lieu of property distribution. *Borodinsky v. Borodinsky*, 162 N.J.Super. 437, 393 A.2d 583 (App.Div.1978). The nondebtor spouse's equitable interest in

property titled in the debtor gives rise to a monetary claim against the bankruptcy estate. 11 U.S.C. § 101(5)(A); *In re Polliard,* 152 B.R. 51, 54 (Bankr.W.D.Pa.1993); *Perlow v. Perlow,* 128 B.R. 412, 415 (E.D.N.C.1991).

■ This court's prior decision in *In re Becker, supra,* is not to the contrary. *Becker* held that principles of equitable distribution are not applicable to determination of the estate's rights in jointly owned property; i.e., those principles cannot be used in a bankruptcy case to create legal title in a nondebtor spouse who didn't hold such title before bankruptcy, or to alter the percentages of ownership or other aspects of legal title as they existed at bankruptcy. *Becker* did **not** hold that principles of equitable distribution do not apply in determining a nondebtor spouse's monetary claim against the bankruptcy estate. The court now holds that such principles can determine such claims.

■ This is not inequitable to other creditors who typically must accept less than full payment from a pro rata share of an estate because implicit in the concept of equitable distribution is that but for the contribution of the nondebtor spouse in the acquisition of the subject property, the other creditors would have no estate against which to assert claims. Moreover, the amount of an equitable distribution claim can take into account marital debts as well. *Monte v. Monte,* 212 N.J.Super. 557, 515 A.2d 1233 (App.Div.1986). Neither, of course, is it inequitable to the debtor.

### III.

■ In this case the marital assets remaining as of trial are substantially less than when the divorce complaint was filed. Under New Jersey law the filing of a divorce complaint effectively places the marital estate *in custodia legis. Vander Weert v. Vander Weert,* 304 N.J.Super. 339, 349, 700 A.2d 894 (App.Div.1997). Dissipation of property is a factor affecting equitable distribution. N.J.Stat.Ann. 2A:34–23.1(i). "Dissipation may be found where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship was in serious jeopardy." *Kothari v. Kothari,* 255 N.J.Super. at 506, 605 A.2d 750. The ultimate question as to dissipation is "whether the assets were expended by one spouse with the intent of diminishing the other spouse's share of the marital estate." *Id.* at 507, 605 A.2d 750.

■ In this case Ms. Lawrence introduced evidence noted above as to the marital estate as of the filing of the divorce complaint, together with evidence as to the diminution in that estate as of the time of trial in this case. Ms. Lawrence's evidence as stated above showed an overwhelming pattern of diversion of assets by the debtor with the intention of diminishing Ms. Lawrence's share of those assets. The debtor's conduct throughout this case, and in the divorce case, has shown total contempt for the rights of Ms. Lawrence in the marital estate. Ms. Lawrence produced prima facie evidence of his diversion and concealment of marital assets, and the debtor's rebuttal evidence on the issues of diversion and concealment consisted almost exclusively of his testimony, uncorroborated by documentary evidence, as to what became of the missing assets. For the reasons stated above, however, the court finds Mr. Lawrence's testimony totally unworthy of belief on these issues. The court therefore holds that, except as noted below, the reduction in the marital estate between the filing of the divorce complaint and the trial in this case is due to the debtor's dissipation of those assets. Ms. Lawrence's claim for equitable distribution will therefore be determined based upon the marital estate as of the filing of the divorce complaint.

### IV.

Ms. Lawrence argues that a monetary claim as equitable distribution of her in-

terest in marital assets not titled in her name is not good enough, and that she is entitled to imposition of a constructive trust on those assets, thereby excluding them from the debtor's bankruptcy estate. She relies on. *Carr v. Carr*, 120 N.J. 336, 576 A.2d 872 (1990), which held that where the husband dies during a divorce case, thereby terminating the wife's right to equitable distribution under New Jersey law, the remedy of constructive trust might be invoked to prevent the wife's equitable interest in the husband's property from devolving to his decedent's estate. Ms. Lawrence argues that the court should impose the remedy of constructive trust here because the application of *Becker* would unjustly enrich the debtor.

■■■■■■ That argument is without merit. Under New Jersey law a constructive trust can be imposed where property has been transferred by a wrongful act including fraud, mistake or undue influence or where property has not been wrongfully acquired but retention would result in unjust enrichment. *D'Ippolito, et al. v. Castoro, et al.*, 51 N.J. 584, 589, 242 A.2d 617 (1968); *see also, Stewart v. Harris Structural Steel Co., Inc.*, 198 N.J.Super. 255, 486 A.2d 1265 (App.Div.1984). The filing of a bankruptcy petition, with the resulting rights of a trustee or debtor in possession under Code section 544, is not an unjust enrichment of the bankruptcy estate relative to Ms. Lawrence's rights. *Carr* does not even mention the New Jersey Supreme Court's prior holding in *Freda* on which this court relied in *Becker*. *Freda* held that a spouse's interest in equitable distribution is subject to existing liens. 118 N.J. at 50, 570 A.2d 409. *Carr* held that a spouse's interest in equitable distribution may be superior to the interests of the beneficiaries of a decedent spouse's estate. 120 N.J. at 350, 576 A.2d 872. The Supreme Court certainly did not intend to overrule *Freda*, decided February 21, 1990, with *Carr*, decided July 24, 1990, or it would have said so. The Supreme Court obviously considered the cases to address very different issues. This court attributes the differing results in those cases to the fact that the equities are quite different when the contest is between a former spouse and a lienholder, as in *Freda*, as opposed to a contest between a former spouse and the donee beneficiaries of a decedent's estate, as in *Carr*.

■■■ As the Sixth Circuit held in *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir.1994):

a claim filed in bankruptcy court asserting rights to certain assets 'held' in 'constructive trust' for the claimant is nothing more than that: a claim. Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor.

*Id.* at 1449.

The situation is different where a constructive trust is imposed prepetition. In *In re DeLauro*, 207 B.R. 412 (Bankr. D.N.J.1997), a husband and wife entered into a property settlement agreement that was incorporated into their final divorce judgment. After entry of the award but prior to the husband's transfer of the property in accordance with the agreement, he filed a bankruptcy petition. The court held that the property which was to be transferred to the wife under the agreement was not property of the bankruptcy estate under section 541(d), which excludes any equitable interest from the bankruptcy estate where the debtor merely holds bare legal title at the commencement of the case. In holding that the trustee may not avoid the constructive trust under section 544 because bare legal title was an insufficient basis upon which to assert an interest, the court distinguished *Becker* wherein no equitable distribution award and final divorce decree had been entered at the

time of the bankruptcy filing. The court's holding in *DeLauro* turned on its finding that a constructive trust arose in favor of the wife upon execution of the property settlement agreement and its incorporation into the divorce judgment. *DeLauro*, 207 B.R. at 417. As in *Becker*, no settlement agreement was entered into by the parties in this case and no equitable distribution award or divorce decree had been entered as of the commencement of this case. Therefore, there is no basis for a finding that a constructive trust arose in favor of Ms. Lawrence prepetition.

## V.

■ Ms. Lawrence argues that the court should allow her equitable distribution of 75% of the marital estate, rather than 50%, because of the debtor's wrongdoing, the absence of evidence as to the value of certain assets, and the suspicion that there may be other, undiscovered assets. The court concludes that a claim of 50% of the net value of the marital estate, with certain adjustments, is appropriate for several reasons. First of all, the real property for which no evidence of value was offered could have been appraised, or at the very least, the assessed values could have been offered by Ms. Lawrence. Thus, even if the debtor did withhold other evidence as to the value of those assets, Ms. Lawrence could have met her burden of proving that value by other means. Since she offered no evidence of value as to certain assets, no equitable distribution claim will be granted as to those.

Secondly, the suspicion that there may be undisclosed assets is not sufficient reason to change the presumption that the parties contributed equally to the acquisition of the marital estate. It must also be considered that Mr. Lawrence has approximately $600,000. of other debts to reckon with in the bankruptcy case. Burdening the bankruptcy estate with a claim of Ms. Lawrence increased by an effectively punitive additional 25% of the marital estate would be inequitable to the other creditors.

Moreover, to the extent Ms. Lawrence's claim is nondischargeable and thus must eventually be paid in full, the probable effect of the claim on the feasibility of any plan of reorganization is a factor which the court has considered.

## VI.

To calculate the equitable distribution monetary claim, the marital property which Ms. Lawrence has received must be subtracted from her half of the marital estate, and other adjustments must be made as follows:

a. The 1992 Geo Storm Hatchback, retained by Ms. Lawrence, has a value of $7,775. The debtor is entitled to a credit in this amount.

b. The joint bank account of $140,000. must be reduced by the $20,000. paid to Joseph Crudup and the $10,400.65 paid to the IRS. There was no testimony that the payment to Crudup was anything other than on a legitimate marital debt, and the payment to the IRS for the Lawrences' joint 1992 taxes was ordered by the superior court. Subtracting those items leaves a net amount in the account of $109,599.35. Of that amount, only $4,878. presently remains. The balance was spent by Ms. Lawrence. She is allowed to retain the $4,878. The fact that the other expenditures which she made from that account allegedly were due to the debtor's failure to pay pendente lite alimony and support can be remedied by any order which the superior court may enter regarding such arrears. The debtor is therefore entitled to a credit for the net value of this account, i.e. $109,599.35.

c. Ms. Lawrence has previously been paid 50% of the $285,793. net proceeds of sale of 39 Takolusa Drive, or $142,896.50. The debtor is entitled to a credit in that amount.

d. The debtor is entitled to a credit of the $5,375. in Ms. Lawrence's IRA.

e. 706 Main St., Asbury Park, the location of the debtor's law firm, is owned

jointly by the debtor and Ms. Lawrence. As of the 4/6/93 date of the divorce complaint, the value of the property was $240,000., subject to a mortgage of $90,000., for an equity of $150,000. The parties' interests will be divided equally. Ms. Lawrence argues that the subsequent paydown of the mortgage should be credited to her because the debtor paid the mortgage at an accelerated rate while failing to pay her alimony. That argument is rejected. Any alimony arrears can be dealt with by the superior court. $150,000./2 = $75,000. as the value of each of the parties' respective ownership interests. Ms. Lawrence shall retain her 50% interest in the premises, but the value of that interest as of 4/6/93 is determined at $75,000., and Mr. Lawrence shall have the right and obligation to purchase her interest in that property for that amount, on terms to be determined in a plan of reorganization or liquidation.

To summarize, equitable distribution of property in which Ms. Lawrence holds or shares title is as follows: she shall retain her 1992 Geo Storm Hatchback, her IRA, her half of the sale proceeds of 39 Takolusa Drive, the net balance in the parties' joint bank account after payment of the IRS and Joseph Crudup, and her half interest in 706 Main St., Asbury Park, the latter of which is valued at $75,000.

Ms. Lawrence's monetary claim for equitable distribution of property in which she did not hold or share legal title is calculated as follows:

| | | |
|---|---|---|
| Ms. Lawrence's half of the net value of marital estate: | $1,254,849/2 = | $627,424.50 |
| Minus property she has received: | | |
| Geo Storm Hatchback | $ 7,775.00 | |
| Joint account | $109,599.35 | |
| 50% of proceeds of 39 Takolusa Drive | $142,896.50 | |
| Ms. Lawrence's IRA | $ 5,375.00 | |
| 50% of value of 706 Main St. | $ 75,000.00 | |
| Total credits: | | $340,645.85 |
| Amount of monetary claim for equitable distribution: | | $286,778.65 |

Ms. Lawrence is allowed a claim against the bankruptcy estate under Code section 502(b) in that amount.

## VII.

Bankruptcy Code section 523(a)(15) provides that debts incurred in the course of a divorce or in connection with a divorce decree or other order of a court of record, other than debts for alimony, maintenance and support (which are nondischargeable under Code section 523(a)(5)), are also nondischargeable in bankruptcy unless the debtor does not have the ability to pay such debt, or unless discharging the debt would result in a benefit to the debtor that outweighs the detriment to the spouse. Once the non-debtor spouse meets her burden of proving that the debt was incurred in the course of a divorce by agreement or order and is not in the nature of alimony, maintenance or support, the burden shifts to the debtor to prove that one of the exceptions based on inability to pay or comparative detriment applies. *In re Koons,* 206 B.R. 768 (Bankr.E.D.Pa.1997). Ms. Lawrence has met her burden of proving that her equitable distribution claim as determined by this court is presumptively nondischargeable under Code section 523(a)(15).

The debtor has failed to introduce any evidence whatsoever that the claim should nevertheless be discharged under one of the exceptions in Code section 523(a)(15)(A) or 523(a)(15)(B). The court holds that Ms. Lawrence's monetary claim for equitable distribution is therefore nondischargeable in bankruptcy.

## VIII.

Ms. Lawrence has incurred postpetition attorney's fees of $213,169.50 and costs of $21,513.47. She has also incurred postpetition fees to Haas Valuation Services, Inc., her forensic accountant, of $45,840. for a total of $280,522.97. She requests that the court allow these fees and costs as part of her claim against the debtor. She also requests a determination that these fees and costs are nondischargeable based on Code section 523(a)(5), which excepts from discharge debts in the nature of alimony, maintenance or support. The debtor op-

poses the relief, arguing that if her fees are in the nature of support and thus covered by Code section 523(a)(5), they are not allowable under Code section 502(b)(5) because they were incurred postpetition. Alternatively, the debtor argues that the superior court should determine fees under Code section 523(a)(5).

a. Allowance of fees and costs under Code section 523(a)(5).

▮▮▮ N.J.Stat.Ann. 2A:34–23 permits a court to award fees for expert and legal services incurred by a party to a divorce action against the other party "when the respective financial circumstances of the parties make the award reasonable and just." In considering an award of counsel fees "the court shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." *Id.* Rule 4:42–9(a) of the New Jersey Superior Court civil practice rules provides that in a family action a court may allow fees to be paid by any party to the action on any claim for divorce, support, alimony, equitable distribution and related matters. In determining whether fees should be imposed, the court must consider the requesting party's need, the other party's ability to pay, and the good or bad faith of either party. *Boardman v. Boardman,* 314 N.J.Super. 340, 714 A.2d 981 (App.Div.1998). Bad faith, warranting an award of fees, can be shown by evidence of misuse or abuse of process to evade divorce obligations, seeking relief not supported by fact or law, intentional misrepresentation of facts or law, or acts that are vexatious, wanton or carried out for oppressive reasons. *Borzillo v. Borzillo,* 259 N.J.Super. 286, 612 A.2d 958 (Ch. Div.1992).

▮▮▮ Under this authority, cause exists to allow fees to Ms. Lawrence against the debtor. First of all, Ms. Lawrence plainly has shown financial need. She makes $7.00 per hour, which on the basis of a forty-hour work week and fifty weeks per year equals income of $14,000. per year. By contrast, the debtor earns approximately $200,000. per year or more. Secondly, the debtor's bad faith, addressed at length above, has both unnecessarily delayed these proceedings and caused Ms. Lawrence to incur far greater fees than she otherwise would have. A particularly egregious instance of this conduct, not previously noted, was the debtor's refusal to concede that his postpetition income was not property of the estate for purposes of enabling Ms. Lawrence to seek alimony and support from that income in the superior court. See Code sections 541(a)(6) and 362(b)(2)(B). The debtor argued that his income from his law practice was profits from his ownership of the firm rather than earnings from services rendered, thereby claiming that a legitimate issue existed under Code section 541(a)(6). After Ms. Lawrence incurred $52,000. in fees seeking to prove her right to claim support from that income, in that it is earnings from services rendered rather than profits from ownership of the law firm, the debtor conceded and entered a consent order that that income was not property of the estate.

The debtor's argument that this court should let the superior court determine such fees is without merit. The fees at issue here were incurred postpetition in connection with Ms. Lawrence's efforts to obtain the right from this court to pursue his postpetition income for support in the superior court and her prosecution in this court of her equitable distribution claim. This court is therefore the appropriate forum to determine and award such fees.

▮▮▮ In determining whether an obligation imposed in connection with a divorce is in the nature of alimony, maintenance or support under Code section 523(a)(5), the courts consider the financial circumstances of the parties and the purpose served by the obligation. *In re Gianakas,* 917 F.2d 759, 763 (3d Cir.1990). The overwhelming majority of courts have concluded that attorney's fees and costs imposed in connection with a divorce or

post-divorce action between former spouses are in the nature of support under Code section 523(a)(5). *Macy v. Macy,* 114 F.3d 1 (1st Cir.1997); *Matter of Hudson,* 107 F.3d 355 (5th Cir.1997); *In re Strickland,* 90 F.3d 444 (11th Cir.1996); *In re Kline,* 65 F.3d 749 (8th Cir.1995); *Matter of Joseph,* 16 F.3d 86 (5th Cir.1994); *In re Jones,* 9 F.3d 878 (10th Cir.1993); *In re Spong,* 661 F.2d 6 (2nd Cir.1981); *In re Clark,* 207 B.R. 651 (Bankr.E.D.Mo.1997); *In re Sweck,* 174 B.R. 532 (Bankr.D.R.I. 1994). *But see, Adams v. Zentz,* 963 F.2d 197 (8th Cir.1992). Attorneys fees and costs incurred in a divorce action were also considered nondischargeable under the former Bankruptcy Act of 1898 which preceded the Bankruptcy Code. *Matter of Catlow,* 663 F.2d 960 (9th Cir.1981); *In re Spong, supra.*

 Although the issue is one of federal law, the federal courts consider the criteria for awarding fees and costs under state law. Since relative need and ability to pay are criteria for such awards under state law, the courts generally consider them support under Code section 523(a)(5). As the court stated in *Matter of Joseph,* 16 F.3d at 88:

> At the core of [debtor's] appeal lies the assumption that only those fees directly attributable to an award of support should escape discharge in bankruptcy. This reflects a misapprehension of the law. An attorney's fee award granted pursuant to a divorce decree does not elude discharge because it tangentially relates to an award of support and main-

tenance; rather, the attorney's fee award is deemed nondischargeable if the award itself reflects a balancing of the parties' financial needs.

*Id.* See also, *In re Lapsley,* 230 B.R. 633 (Bankr.M.D.Fla.1999). For the same reasons, it was held in *In re Shea,* 221 B.R. 491 (Bankr.D.Minn.1998), that attorney's fees incurred in attempting to enforce a property settlement agreement are nondischargeable under Code section 523(a)(5) even though the property settlement obligation was itself dischargeable under that section.

 The enactment of Code section 523(a)(15) in 1994, which created a presumption that all obligations imposed in connection with a divorce other than alimony, maintenance and support are also nondischargeable, does not change this result. "A review of existing case law and the legislative history of section 523(a)(15) leads us to the conclusion that attorneys' fees continue to be governed by section 523(a)(5)." *Macy v. Macy,* 114 F.3d at 3.[3]

 As is apparently true in most other states, New Jersey law considers the financial circumstances of the parties in imposing attorney's fees and costs in a divorce case. N.J.Stat.Ann. 2A:34–23; *Boardman v. Boardman, supra.* A substantial equitable distribution award to a party does not necessarily preclude an award of fees to such party. *Shaffer v. Shaffer,* 154 N.J.Super. 491, 381 A.2d 1221 (App.Div.1977). It follows that such fees and costs are in the nature of support and are therefore nondischargeable under

---

**3.** It would, however, certainly be better practice to seek such fees and costs in the alternative under Code section 523(a)(15). *See, In re Shea,* 221 B.R. at 500 (allowing attorney's fees in the alternative under Code section 523(a)(15)). In this case such fees were requested in Count Four of the amended counterclaim under Code section 523(a)(15), but then Ms. Lawrence abandoned the issue at trial by not claiming such fees and costs under § 523(a)(15) in her trial brief and summation. Had the court not determined the fees to be nondischargeable under § 523(a)(5),

Ms. Lawrence would therefore not have been entitled to them under § 523(a)(15). Failure to brief and argue an issue to the trial court results in abandonment of the issue. *Thurman v. Yellow Freight Systems, Inc.,* 97 F.3d 833, 835 (6th Cir.1996); *Daniel v. Taylor,* 808 F.2d 1401, 1405 (11th Cir.1986); *Hoffman v. Bankers Trust Co.,* 925 F.Supp. 315, 318 (M.D.Pa.1995). The court further notes that unlike actions under Code section 523(a)(5), there is a statute of limitations imposed by Code section 523(c)(1) on actions under Code section 523(a)(15). *In re Macy,* 192 B.R. 802, 803 (Bankr.D.Mass.1996).

Code section 523(a)(5). New Jersey law also permits the award of fees for expert witnesses in divorce cases. N.J.Stat.Ann. 2A:34–23; *Fellerman v. Bradley*, 191 N.J.Super. 73, 465 A.2d 558 (Ch.Div.1983), *aff'd* 192 N.J.Super. 556, 471 A.2d 788, *aff'd* 99 N.J. 493, 493 A.2d 1239. The court therefore has discretion to award Ms. Lawrence fees incurred for services of Haas, her forensic accountant, as well.

 As to the amount allowed under Code section 523(a)(5), the financial need of Ms. Lawrence is great, the ability of the debtor to pay such fees from future income is substantial, and the debtor's bad faith has been egregious. Considering all of the circumstances, the court awards Ms. Lawrence judgment against the debtor for fees and costs of $250,000. under Code section 523(a)(5) for postpetition services in connection with the bankruptcy case and such portion of this case which has determined equitable distribution. If this court had not determined equitable distribution, the superior court would have had the obligation to make such determination and the right to award fees, which as noted are nondischargeable under Code section 523(a)(5). This award is approximately 89% of the total fees incurred in connection with protecting Ms. Lawrence's rights in this case. The court declines to grant the entire amount of fees requested, because if Mr. Lawrence had proceeded in good faith, Ms. Lawrence would as a matter of equity have had to bear some portion of her own fees, and would have had the financial ability to do so from the equitable distribution awarded her in this case.

The court notes that this award is without prejudice to Ms. Lawrence's right to seek fees and costs from the superior court for services rendered in that case.

 There is an important and basic distinction between allowing a claim against the bankruptcy estate and determining such claim to be nondischargeable. Allowing the claim against the estate entitles the creditor to payment from the estate, and in a chapter 11 case, to vote on any plan of reorganization or liquidation. See 11 U.S.C. §§ 501, 502 and 1126. To the extent any allowed claim is not paid in full under a plan in chapter 11, it is discharged unless it falls within one of the exceptions to discharge under Code section 523. 11 U.S.C. § 1141(d)(2).

 Although Ms. Lawrence can seek payment of this award of fees and costs from the debtor's property which is not property of the bankruptcy estate, this part of her claim is not, however, an allowable claim against the estate. Code section 502(b)(5) provides that claims under Code section 523(a)(5) which are "unmatured" as of the petition date are disallowed as claims against the estate. Since these fees had not been incurred as of the petition date, they were "unmatured" as of that date. By contrast, any "matured" claim under § 523(a)(5) is an allowed claim against the estate, and is entitled to priority in payment under Code section 507(a)(7). A "matured claim" is one which is unconditionally due and owing. BLACK'S LAW DICTIONARY, 6th ed. p. 979.

### *CONCLUSION*

To summarize, Ms. Lawrence is awarded the following property as equitable distribution: she shall retain her 1992 Geo Storm Hatchback, her IRA, her half of the sale proceeds of 39 Takolusa Drive, the net balance in the parties' joint bank account, and her half interest in 706 Main St., Asbury Park, the latter of which the debtor is to purchase from her for $75,000.

In addition, Ms. Lawrence is allowed a monetary claim in the nature of equitable distribution in the amount of $286,778.65, which is both an allowed claim against the bankruptcy estate and a nondischargeable judgment against the debtor under Code section 523(a)(15).

Ms. Lawrence is also awarded judgment for fees and costs of $250,000., which is not an allowed claim against the bankruptcy

estate but which is a nondischargeable obligation of the debtor under Code section 523(a)(5).

Ms. Lawrence shall submit a form of judgment within ten days under D.N.J.L.B.R. 9072–1(c).